COMMONWEALTH of Pennsylvania,
Appellee

v.

Rodney Scott BOWMASTER,
Appellant.

Superior Court of Pennsylvania.

Argued May 14, 2014.
Filed Sept. 17, 2014.
Reargument Denied Nov. 18, 2014.

Frederick D. Lingle, Lock Haven, for appellant.

Karen E. Kuebler, Assistant District Attorney, Lock Haven, for Commonwealth, appellee.

BEFORE: FORD ELLIOTT, P.J.E., OLSON, and STRASSBURGER,* JJ.

OPINION BY STRASSBURGER, J.:

Rodney Scott Bowmaster (Appellant) appeals from the judgment of sentence imposed following his October 7, 2013 convictions for weapons of mass destruction, prohibited offensive weapons, recklessly

* Retired Senior Judge assigned to the Superior Court.

endangering another person,[1] possession of a designer drug, and multiple counts of possession of a controlled substance with intent to deliver.[2] After careful review, we reverse the order denying Appellant's motion to suppress and vacate his judgment of sentence.

On October 25, 2012, at approximately 2:10 in the morning, Pennsylvania State Troopers Andrew Mincer and William Ritrosky received information from burglary victim, Kristen Karchner (Karchner), that a handgun stolen from her home was located in the shed behind Appellant's residence. Karchner related that her son observed the gun in the shed, and told her it was traded to pay off a debt. After receiving this information, Troopers Mincer and Ritrosky went immediately to Appellant's residence to investigate, arriving at approximately 3:15 A.M.

Appellant lived in a mobile home park. His trailer was situated perpendicular to the road. The door of the home, located on the side of the trailer, was accessible only by walking half the length of the building, through Appellant's yard. Appellant's yard was surrounded by a chain-link fence and closed gate. "Private Property" and "Beware of Dog" signs were posted on the fence. Upon arrival, the troopers observed the glow of lights and a television through a window immediately to the left of the door. The window had blinds, but was not completely closed due to the presence of a window fan. While Trooper Ritrosky knocked on the mobile home's door, Trooper Mincer peered through the window beside the door and was able to observe Appellant and another man sitting on a couch immediately under the window. Trooper Mincer watched Appellant rise from the couch to answer the door and the other man move quickly to the back of the trailer. After both men left the room, Trooper Mincer was able to observe a large knife, what he believed to be heroin packets on a coffee table, and a rifle in the corner of the room. Further, Trooper Mincer reported smelling a chemical smell consistent with burnt synthetic drugs.

After Appellant answered the door, Trooper Ritrosky explained why they were there. Trooper Mincer then asked Appellant whether anyone else was in the home. Appellant responded "no." Based on his earlier observations, Trooper Mincer performed a protective sweep of the trailer, during which he detained two adult individuals and one child, and observed a large knife, a rifle, and assorted packaged drugs in plain view. A search warrant was obtained. Following the execution of the warrant, the state police seized from Appellant's home various quantities of narcotics, various quantities of prescription medication, multiple scales, a number of laptop computers, three safes, various indicia of drug use and trafficking, as well as other contraband.

Appellant was arrested and charged with multiple crimes stemming from the search of his home. On July 15, 2013, Appellant filed a pre-trial motion to suppress the evidence seized by state police. On August 8, 2013, the trial court held a hearing on Appellant's motion. By opinion and order dated August 19, 2013, Appellant's motion was denied.

On August 26, 3013, Appellant proceeded to a stipulated bench trial. On August 30, 2013, Appellant was found guilty of the aforementioned offenses. On October 8, 2013, Appellant was sentenced to an aggregate term of seven years and nine

---

1. 18 Pa.C.S. §§ 2716(a), 908(a), and 2705, respectively.

2. 35 P.S. §§ 780–113(a)(36), (a)(30), respectively.

months to sixteen years of incarceration. This timely appeal followed. Both Appellant and the trial court complied with Pa. R.A.P. 1925.

■■■ On appeal, Appellant asks us to consider whether the trial court erred in denying his motion to suppress. Appellant's Brief at 8. Specifically, Appellant claims that the side yard of his home constituted the curtilage of his property; thus, the police viewed the interior of his home from an illegal vantage point. He further argues that there existed no exigent circumstances to support nighttime warrantless entry onto the curtilage of his property or Trooper Mincer's warrantless search of his home. Appellant's Brief at 12–15. The Commonwealth contends that the evidence was lawfully obtained, first arguing that the troopers did not violate the curtilage of Appellant's residence, nor did he have a reasonable expectation of privacy in the interior of his home when the shades were not drawn. Commonwealth's Brief at 2–3. The Commonwealth further argues that the observations of Trooper Mincer constituted exigent circumstances that justified the warrantless search. *Id.* at 3–5.

> Our analysis of this question begins with the presumption that where a motion to suppress has been filed, the burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible. If the trial court denies the motion, we must determine whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. In so doing, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Berkheimer,* 57 A.3d 171, 177 (Pa.Super.2012) (en banc) (citations and quotations omitted).

■■■ Absent probable cause and exigent circumstances, warrantless searches and seizures in a private home violate both the Fourth Amendment and Article 1 § 8 of the Pennsylvania Constitution. *Commonwealth v. Lopez,* 415 Pa.Super. 252, 609 A.2d 177, 178–179 (1992). These constitutional protections have been extended to the curtilage of a person's home. *Id.* at n. 1. In determining what constitutes "curtilage," we consider "factors that determine whether an individual reasonably may expect that an area immediately adjacent to the home will remain private. Curtilage is entitled to constitutional protection from unreasonable searches and seizures as a place where the occupants have a reasonable expectation of privacy that society is prepared to accept." *Commonwealth v. Johnson,* 68 A.3d 930, 936 at n. 3 (Pa.Super.2013) (citation omitted).

■■■ The record establishes that Appellant's yard was fenced and gated at the time of the incident. N.T., 8/8/2013, at 11, 26–27; Defense Suppression Exhibits 1 and 2. The fence contained numerous signs which indicated that the area was off-limits to the general public. *Id.* Based on this evidence, we agree with Appellant that the side yard of his home constituted the curtilage of his property and was subject to a reasonable expectation of privacy. *See Commonwealth v. Gibbs,* 981 A.2d 274, 279 (Pa.Super.2009) (holding that front porch did *not* constitute "curtilage" where there was no front yard or other enclosed space preceding or surrounding the porch, the porch abutted the sidewalk, there was no gate blocking entry to the porch and noth-

ing else that would indicate that it was closed to members of the general public). However, our inquiry does not end there; we must determine whether there were both probable cause and exigent circumstances to support the officers' warrantless entry onto Appellant's property.

■ It is well established that "probable cause alone will not support a warrantless search or arrest in a residence ... unless some exception to the warrant requirement is also present.... [A]bsent consent or exigent circumstances, private homes may not be constitutionally entered to conduct a search or to effectuate an arrest without a warrant, **even** where probable cause exists." *Commonwealth v. Santiago,* 736 A.2d 624, 631 (Pa.Super.1999) (citations omitted; emphasis in original). In *Commonwealth v. Roland,* 535 Pa. 595, 637 A.2d 269 (1994), our Supreme Court explained that "[i]n determining whether exigent circumstances exist, a number of factors are to be considered", such as,

> (1) the gravity of the offense, (2) whether the suspect is reasonably believed to be armed, (3) whether there is above and beyond a clear showing of probable cause, (4) whether there is strong reason to believe that the suspect is within the premises being entered, (5) whether there is a likelihood that the suspect will escape if not swiftly apprehended, (6) whether the entry was peaceable, and (7) the time of the entry, i.e., whether it was made at night. These factors are to be balanced against one another in determining whether the warrantless intrusion was justified.

Other factors may also be taken into account, such as whether there is hot pursuit of a fleeing felon, a likelihood that evidence will be destroyed if police take the time to obtain a warrant, or danger to police or other persons inside or outside the dwelling. Nevertheless, police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests.

*Id.* at 600, 637 A.2d at 270–71 (quotations and citations omitted).

■ In this case, a balancing of the *Roland* factors outlined above demonstrates a lack of exigency for a warrantless search of Appellant's property.. Assuming the gravity of the offense of possession of a potentially stolen gun is high, the officers had no reason to believe the occupants of the home were aware of the officers' presence such that destruction of evidence, escape, or violence was imminent. More importantly, the time of day of the warrantless search weighs heavily in favor of Appellant's contention that the officers should have obtained a search warrant.

■ As an *en banc* panel of this Court recently explained,

> [t]hat presumption [that a warrantless search is unreasonable] is buttressed where, as here, the search at issue is conducted in the dark of night. As observed by Mr. Justice Harlan, "[I]t is difficult to imagine a more severe invasion of privacy than the nighttime intrusion into a private home ..." *Jones v. United States,* 357 U.S. 493, 498, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958). Indeed, "the fact that an entry is made at night raises particular concern over its reasonableness ... and may elevate the degree of probable cause required, both as implicating the suspect, and as showing that he is in the place entered." *Commonwealth v. Williams,* 483 Pa. 293, 396 A.2d 1177, 1180 (1979) (citing *Jones, supra.*). So palpable is that concern in this Commonwealth that our Supreme Court has circumscribed even the

issuance of warrants for probable cause, mandating that "(n)o search warrant shall authorize a nighttime search unless the affidavits show reasonable cause for such nighttime search." Pa.R.Crim.P. 203(E). Clarifying the extent to which a magistrate may lawfully issue such warrants, this Court has expressly distinguished the showing of probable cause necessary for the issuance of daytime warrants from those to be served at night:

> The Rule is clear that probable cause is required for the issuance of a search warrant authorizing a daytime or nighttime search. However, due to the greater intrusion upon individual privacy occasioned by a nighttime search, some greater justification than that required for a daytime search must be shown. *See* Pa.R.Crim.P. [203(E) and Comment]. *Put simply, the affidavit for a warrant authorizing a nighttime search must show both probable cause and some reason why the search cannot wait until morning.*

*Commonwealth v. Baldwin,* 253 Pa.Super. 1, 384 A.2d 945, 948 (1978) (emphasis added). *Accord Commonwealth v. Camperson,* 437 Pa.Super. 355, 650 A.2d 65, 70 (1994) (noting that the Rule of Criminal Procedure governing issuance of warrants for nighttime searches "requires a showing that the search cannot wait until morning").

*Berkheimer,* 57 A.3d at 178–179.

Instantly, there was no exigency or urgency established by the testimony presented that would support the Commonwealth's argument that this search could not wait until morning or until a warrant was procured. The record does not indicate when the Karchner's home was burglarized, or by whom, just that Karchner's son reported to her that an allegedly stolen gun was located in a shed on Appellant's property. Though the tip and belief that Appellant is in possession of a firearm arguably provide probable cause to search the shed, and possibly Appellant's home, these factors do not outweigh the reality that no exigency existed to justify a warrantless nighttime search. Contrary to the Commonwealth's argument, the alleged observations of Trooper Mincer through the window cannot support the original search for the firearm, nor do they negate the officers' illegal entry onto Appellant's property.

As we have found that Appellant had a reasonable expectation of privacy in the curtilage of his home and the Commonwealth has failed to show exigent circumstances, we conclude that the troopers were required to obtain a search warrant before engaging in an investigation onto the curtilage of Appellant's property in the middle of the night. By failing to do so, they violated Appellant's constitutional rights to be free from unreasonable searches and seizures. As a result, the entry by police onto Appellant's property was illegal and all evidence seized in violation of his constitutional rights should have been suppressed.

Judgment of sentence vacated. Order denying Appellant's motion to suppress reversed. Case remanded for additional proceedings. Jurisdiction relinquished.

President Judge Emeritus FORD ELLIOTT, joins the opinion.

Judge OLSON files a concurring opinion.

CONCURRING OPINION BY OLSON, J.:

I am constrained to agree that the trial court erred in failing to suppress the evidence introduced against Appellant. I write separately, however, as I reach this

conclusion for reasons that differ from those expressed by the learned Majority.

The Majority offers the following analysis to support its conclusion that the trial court erred in denying Appellant's motion to suppress. First, the Majority construes the term "curtilage" to include the entire side yard surrounding Appellant's mobile home. Having construed the term "curtilage" in this manner, the Majority then holds that Pennsylvania State Troopers William Ritrosky (Trooper Ritrosky) and Andrew Mincer (Trooper Mincer) impermissibly intruded upon the protected area around Appellant's trailer merely by entering Appellant's property. Lastly, the Majority reasons that the Commonwealth failed to establish exigent circumstances that justified warrantless entry onto Appellant's property.

In the initial component of its analysis, the Majority reasons that Appellant's entire side yard constituted curtilage because signs saying "Beware of Dogs" and "Private Property—No Trespassing" were displayed, and a closed fence surrounded the area.[1] *See* Majority Opinion at 5–6. The Majority then treats the activities of both troopers on the same footing, declaring that they both made unlawful, warrantless entries onto Appellant's property. *Id.* The record is clear, however, that when the officers entered the property, both Trooper Ritrosky and Trooper Mincer initially approached the front door of Appellant's

trailer. N.T., 8/8/13, at 14. Thereafter, while Trooper Ritrosky remained at the entrance and knocked on the door, Trooper Mincer proceeded further onto Appellant's yard and stopped in front of the second window down from the doorway of the trailer. *Id.*

As the Majority points out, our cases have extended the constitutional protections of the Fourth Amendment and Article 1, § 8 of the Pennsylvania Constitution to the curtilage of an individual's home. *See* Majority Opinion at 792; *see also Commonwealth v. Johnson*, 68 A.3d 930, 936 n. 3 (Pa.Super.2013) (citation omitted). To assess what is properly deemed curtilage, "we consider factors that determine whether an individual reasonably may expect that an area immediately adjacent to the home will remain private. Curtilage is entitled to constitutional protection from unreasonable searches and seizures as a place where the occupants have a reasonable expectation of privacy that society is prepared to accept." *Id.* (internal quotation marks and citations omitted).

I am not convinced, as a matter of law, that the erection of signs and the presence of a fence can alone transform a front entryway and porch area into the protected confines of the curtilage of a property. Our cases have consistently considered many factors—not simply the placement of signs or the erection of a fence—to deter-

---

1. The Majority states "that Appellant's yard was fenced and gated at the time of the incident." Majority Opinion at 792. I agree that the record establishes that there was a fence around Appellant's yard that had a gate. However, it is not clear from the record that the gate was closed at the time that the troopers arrived. In fact, when specifically asked whether the gate was closed, Trooper Mincer stated that he could not recall. N.T., 8/8/13 at 27. I also note that Appellant's counsel introduced exhibits at the suppression hearing, including three photographs of Appellant's mobile home, showing the area around the front entrance of the structure. *See* Defendant's Exhibits 1, 2 and 3, 8/8/13. Defendant's Exhibits 1 and 3 show that the gate is opened. I acknowledge that these photos were taken sometime after the incident in question. However, when shown the photos, Trooper Ritrosky testified that, except for the growth of weeds around the trailer, the photo showed the trailer basically the same way as it was on the date in question. N.T., 8/8/13 at 11.

mine whether an individual reasonably may expect privacy within an area immediately adjacent to his home. *See e.g. Commonwealth v. Simmen,* 58 A.3d 811, 815–816 (Pa.Super.2012) (driveway in front of house leading up to internal garage did not constitute curtilage where it was primary access route to front door and there were no signs warning against trespass or fences precluding street access); *Commonwealth v. Gibbs,* 981 A.2d 274, 280 (Pa.Super.2009) (front porch did not constitute curtilage where it was used by deliverymen and visitors to access apartment, it was contiguous to public sidewalk, and there was no gate or sign precluding access by members of the public). I must concede that our curtilage analyses in these cases considered the presence (or absence) of signs and fences. Nevertheless, our reasoning therein turned more so upon the reasonable expectations of the occupants, which we gleaned from the likelihood that the public would require access through the challenged area to reach the defendant's residence and from the proximity and orientation of the challenged space to public pathways and thoroughfares. The pattern that emerges in these cases is that there is a lower expectation of privacy in frontal street-oriented spaces required for entryway access than in areas located at the rear of a property. *Compare Simmen,* 58 A.3d at 816 (defendant did not have a reasonable expectation of privacy in front driveway that served as main pathway to front door) and *Gibbs,* 981 A.2d at 280 (front porch did not qualify as curtilage where it functioned as principal entryway into residence) with *Commonwealth v. Lee,* 972 A.2d 1, 4 (Pa.Super.2009) (recognizing that defendant's reasonable expectation of privacy in area behind his home required Commonwealth to establish both probable cause and exigent circumstances to justify warrantless search).

Here, the trial court examined the evidence from Appellant's suppression hearing, including the testimony of the witnesses and the exhibits entered into the record. Based upon its review, the trial court determined that Appellant's side yard did not constitute curtilage because members of the public would have required access through this segment of the property in order to reach Appellant's front door.[2] Trial Court Opinion, 8/19/13, at 3–4 ¶ 12. In essence, the trial court held that curtilage may not reasonably extend, consistent with society's expectations, to an area entirely surrounding a home such that the residence becomes an island unto itself. Framed in this way, and focusing strictly upon the troopers' initial approach towards Appellant's front door, I agree with the trial court's sensible interpretation of the term "curtilage."[3] As the trial court observed, "To gain access to the front door of [Appellant's] residence, Trooper Mincer and Trooper Ritroskey were required to enter a yard area through a gate. This area is clearly open to the public, as anyone desiring to make a delivery and come in contact with anyone in the residence needed to access [Appellant's] property in the same manner as the Troopers." *Id.* at 3–4 ¶ 12.

In sum, I do not believe that our case law compels the conclusion that Trooper Ritrosky and Trooper Mincer entered the

---

**2.** The photographs introduced into evidence at the suppression hearing show that there was no approach to Appellant's front door except through the gate and past the posted signage. *See* Defendant's Exhibits 1 and 3, 8/8/13.

**3.** I disavow the trial court's later conclusion that the second window down from Appellant's front door where Trooper Mincer positioned himself to see into the trailer did not constitute the curtilage of the property. *See* Trial Court Opinion, 8/19/13, at 8–9.

constitutionally protected curtilage of Appellant's property when they initially crossed through the gate and approached the front door of Appellant's trailer, as any member of the public might do. *See Florida v. Jardines,* — U.S. —, 133 S.Ct. 1409, 185 L.Ed.2d 495 (U.S.2013) ("A police officer not armed with a warrant may approach a home in hopes of speaking to its occupants, because that is no more than any private citizen might do.") (internal quotation marks and citation omitted); *Commonwealth v. Gibson,* 536 Pa. 123, 638 A.2d 203, 207 (1994) ("the police have the power to knock on the doors of the citizens of this Commonwealth for investigatory purposes without probable cause"). Accordingly, I do not agree with my learned colleagues that the troopers' mere entrance onto Appellant's property was impermissible. However, I am constrained to agree that Trooper Mincer impermissibly encroached upon the protected curtilage surrounding Appellant's residence when he walked further away from the front door in an easterly direction, took up

a position two windows down from Appellant's main entrance, and observed contraband from that vantage point. In contrast to the common entryway, this area of the property was more removed from the entrance to Appellant's lot and members of the public would not need to cross this portion of the property in order to gain access to Appellant's front door. Thus, a greater expectation of privacy attached to this area and I would include it within the curtilage of Appellant's property. Since Trooper Mincer lacked probable cause and exigent circumstances to support his movement towards this part of the curtilage surrounding Appellant's home, we must disregard his subsequent observations as the fruit of an illegal search. In turn, since the Commonwealth relies upon Trooper Mincer's observations to support its claim that exigent circumstances justified the trooper's entry into Appellant's trailer, I, like the Majority, would conclude that the search of Appellant's residence was unlawful.[4] Hence, I agree that Appel-

4. If Trooper Mincer had observed contraband from a lawful vantage point, I would not hesitate to conclude that he possessed both probable cause and exigent circumstances to justify entry into Appellant's trailer. The record establishes that, when Trooper Mincer looked through the window, he saw a rifle and large knives. N.T., 8/8/13 at 18, 19. He also saw small plastic bags that, in his experience, resembled heroin packets. *Id.* Moreover, a window fan blew into his face from which Trooper Mincer smelled a strong chemical odor that, in his experience, was from synthetic drugs. *Id.* at 18. Most importantly, Topper Mincer saw a person other than Appellant in the room who fled to the rear of the trailer when Trooper Ritrosky knocked at the front door. *Id.* at 15. When Appellant answered the front door, Officer Mincer asked Appellant whether anyone else was in the trailer and Appellant answered "no". *Id.* at 16. Trooper Mincer knew that was not true as he had seen the other person flee to the rear of the trailer. In my view, all of these factors established probable cause and exigent circumstances to do a protective

sweep of the trailer. *See Johnson,* 68 A.3d at 944–946 (police officers who restrained defendant and conducted protective sweep of his trailer without a warrant acted with probable cause and exigent circumstances when, in response to call about drug-related activity, officers encountered an occupant of defendant's trailer who could have alerted others to officer's presence, officer's detected odor of burning marijuana while on front porch of trailer, and officer's reasonably feared destruction of evidence if defendant were permitted to re-enter trailer). Additionally, I am not bothered by the hour at which the troopers arrived at the trailer. The troopers were investigating a claim that a gun was stolen in a burglary and, at 2:10 a.m. on the date in question, they received information from a witness that Appellant had received the stolen gun in satisfaction of a debt. N.T., 8/8/13, at 5. The troopers then proceeded directly to Appellant's home where they saw lights on in the trailer and could see that a television was on. *Id.* at 6, 14. Based on this information, the troopers believed that people were awake

lant was entitled to suppression of the evidence offered against him.

in the trailer. *Id.* at 13. Trooper Ritrosky then knocked at the front door. These facts are very different from the facts in *Commonwealth v. Berkheimer*, 57 A.3d 171 (Pa.Super.2012) (*en banc*), the case upon which the learned Majority relies. Majority Opinion at 793–94. In *Berkheimer*, based on a tip that a person wanted on a probation detainer may be at a specific address, troopers arrived at the appellants' home at 11:30 p.m. and noticed that the rooms were all dark and the occupants appeared to be sleeping. One of the troopers nevertheless "banged" on the front door causing the door to open. The trooper than entered the darkened home where he saw two people sleeping. *Id.* at 174–175. Clearly, the facts of the instant case are markedly different from the situation in *Berkheimer*. Considering the totality of the circumstances, I believe that it would have been permissible for Trooper Mincer to enter Appellant's trailer if Trooper Mincer had not entered the curtilage of Appellant's property in order to obtain the information necessary to establish probable cause and exigent circumstances.