J-A14040-14

2014 PA Super 199

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| RODNEY SCOTT BOWMASTER, | |
| Appellant | No. 1925 MDA 2013 |

Appeal from the Judgment of Sentence of October 7, 2013
In the Court of Common Pleas of Clinton County
Criminal Division at No(s): CP-18-CR-0000483-2012

BEFORE: FORD ELLIOTT, P.J.E., OLSON and STRASSBURGER,* JJ.

CONCURRING OPINION BY OLSON, J.: **FILED SEPTEMBER 17, 2014**

I am constrained to agree that the trial court erred in failing to suppress the evidence introduced against Appellant. I write separately, however, as I reach this conclusion for reasons that differ from those expressed by the learned Majority.

The Majority offers the following analysis to support its conclusion that the trial court erred in denying Appellant's motion to suppress. First, the Majority construes the term "curtilage" to include the entire side yard surrounding Appellant's mobile home. Having construed the term "curtilage" in this manner, the Majority then holds that Pennsylvania State Troopers William Ritrosky (Trooper Ritrosky) and Andrew Mincer (Trooper Mincer) impermissibly intruded upon the protected area around Appellant's trailer merely by entering Appellant's property. Lastly, the Majority reasons that

*Retired Senior Judge assigned to the Superior Court.

the Commonwealth failed to establish exigent circumstances that justified warrantless entry onto Appellant's property.

In the initial component of its analysis, the Majority reasons that Appellant's entire side yard constituted curtilage because signs saying "Beware of Dogs" and "Private Property – No Trespassing" were displayed, and a closed fence surrounded the area.[1] *See* Majority Opinion at 5-6. The Majority then treats the activities of both troopers on the same footing, declaring that they both made unlawful, warrantless entries onto Appellant's property. *Id.* The record is clear, however, that when the officers entered the property, both Trooper Ritrosky and Trooper Mincer initially approached the front door of Appellant's trailer. N.T., 8/8/13, at 14. Thereafter, while Trooper Ritrosky remained at the entrance and knocked on the door,

---

[1] The Majority states "that Appellant's yard was fenced and gated at the time of the incident." Majority Opinion at 5. I agree that the record establishes that there was a fence around Appellant's yard that had a gate. However, it is not clear from the record that the gate was closed at the time that the troopers arrived. In fact, when specifically asked whether the gate was closed, Trooper Mincer stated that he could not recall. N.T., 8/8/13 at 27. I also note that Appellant's counsel introduced exhibits at the suppression hearing, including three photographs of Appellant's mobile home, showing the area around the front entrance of the structure. *See* Defendant's Exhibits 1, 2 and 3, 8/8/13. Defendant's Exhibits 1 and 3 show that the gate is opened. I acknowledge that these photos were taken sometime after the incident in question. However, when shown the photos, Trooper Ritrosky testified that, except for the growth of weeds around the trailer, the photo showed the trailer basically the same way as it was on the date in question. N.T., 8/8/13 at 11.

Trooper Mincer proceeded further onto Appellant's yard and stopped in front of the second window down from the doorway of the trailer. *Id***.**

As the Majority points out, our cases have extended the constitutional protections of the Fourth Amendment and Article 1, § 8 of the Pennsylvania Constitution to the curtilage of an individual's home. *See* Majority Opinion at 5; *see also Commonwealth v. Johnson*, 68 A.3d 930, 936 n.3 (Pa. Super. 2013) (citation omitted). To assess what is properly deemed curtilage, "we consider factors that determine whether an individual reasonably may expect that an area immediately adjacent to the home will remain private. Curtilage is entitled to constitutional protection from unreasonable searches and seizures as a place where the occupants have a reasonable expectation of privacy that society is prepared to accept." *Id***.** (internal quotation marks and citations omitted).

I am not convinced, as a matter of law, that the erection of signs and the presence of a fence can alone transform a front entryway and porch area into the protected confines of the curtilage of a property. Our cases have consistently considered many factors -- not simply the placement of signs or the erection of a fence -- to determine whether an individual reasonably may expect privacy within an area immediately adjacent to his home. *See e.g. Commonwealth v. Simmen*, 58 A.3d 811, 815-816 (Pa. Super. 2012) (driveway in front of house leading up to internal garage did not constitute curtilage where it was primary access route to front door and there were no signs warning against trespass or fences precluding street access);

*Commonwealth v. Gibbs*, 981 A.2d 274, 280 (Pa. Super. 2009) (front porch did not constitute curtilage where it was used by deliverymen and visitors to access apartment, it was contiguous to public sidewalk, and there was no gate or sign precluding access by members of the public). I must concede that our curtilage analyses in these cases considered the presence (or absence) of signs and fences. Nevertheless, our reasoning therein turned more so upon the reasonable expectations of the occupants, which we gleaned from the likelihood that the public would require access through the challenged area to reach the defendant's residence and from the proximity and orientation of the challenged space to public pathways and thoroughfares. The pattern that emerges in these cases is that there is a lower expectation of privacy in frontal street-oriented spaces required for entryway access than in areas located at the rear of a property. *Compare Simmen*, 58 A.3d at 816 (defendant did not have a reasonable expectation of privacy in front driveway that served as main pathway to front door) and *Gibbs*, 981 A.2d at 280 (front porch did not qualify as curtilage where it functioned as principal entryway into residence) with *Commonwealth v. Lee*, 972 A.2d 1, 4 (Pa. Super. 2009) (recognizing that defendant's reasonable expectation of privacy in area behind his home required Commonwealth to establish both probable cause and exigent circumstances to justify warrantless search).

Here, the trial court examined the evidence from Appellant's suppression hearing, including the testimony of the witnesses and the

exhibits entered into the record. Based upon its review, the trial court determined that Appellant's side yard did not constitute curtilage because members of the public would have required access through this segment of the property in order to reach Appellant's front door.[2] Trial Court Opinion, 8/19/13, at 3-4 ¶ 12. In essence, the trial court held that curtilage may not reasonably extend, consistent with society's expectations, to an area entirely surrounding a home such that the residence becomes an island unto itself. Framed in this way, and focusing strictly upon the troopers' initial approach towards Appellant's front door, I agree with the trial court's sensible interpretation of the term "curtilage."[3] As the trial court observed, "To gain access to the front door of [Appellant's] residence, Trooper Mincer and Trooper Ritroskey were required to enter a yard area through a gate. This area is clearly open to the public, as anyone desiring to make a delivery and come in contact with anyone in the residence needed to access [Appellant's] property in the same manner as the Troopers." *Id.* at 3-4 ¶ 12.

In sum, I do not believe that our case law compels the conclusion that Trooper Ritrosky and Trooper Mincer entered the constitutionally protected

_____

[2] The photographs introduced into evidence at the suppression hearing show that there was no approach to Appellant's front door except through the gate and past the posted signage. **See** Defendant's Exhibits 1 and 3, 8/8/13.

[3] I disavow the trial court's later conclusion that the second window down from Appellant's front door where Trooper Mincer positioned himself to see into the trailer did not constitute the curtilage of the property. **See** Trial Court Opinion, 8/19/13, at 8-9.

curtilage of Appellant's property when they initially crossed through the gate and approached the front door of Appellant's trailer, as any member of the public might do. **See Florida v. Jardines**, 133 S.Ct. 1409 (U.S. 2013) ("A police officer not armed with a warrant may approach a home in hopes of speaking to its occupants, because that is no more than any private citizen might do.") (internal quotation marks and citation omitted); **Commonwealth v. Gibson**, 638 A.2d 203, 207 (Pa. 1994) ("the police have the power to knock on the doors of the citizens of this Commonwealth for investigatory purposes without probable cause"). Accordingly, I do not agree with my learned colleagues that the troopers' mere entrance onto Appellant's property was impermissible. However, I am constrained to agree that Trooper Mincer impermissibly encroached upon the protected curtilage surrounding Appellant's residence when he walked further away from the front door in an easterly direction, took up a position two windows down from Appellant's main entrance, and observed contraband from that vantage point. In contrast to the common entryway, this area of the property was more removed from the entrance to Appellant's lot and members of the public would not need to cross this portion of the property in order to gain access to Appellant's front door. Thus, a greater expectation of privacy attached to this area and I would include it within the curtilage of Appellant's property. Since Trooper Mincer lacked probable cause and exigent circumstances to support his movement towards this part of the curtilage surrounding Appellant's home, we must disregard his subsequent

observations as the fruit of an illegal search. In turn, since the Commonwealth relies upon Trooper Mincer's observations to support its claim that exigent circumstances justified the trooper's entry into Appellant's trailer, I, like the Majority, would conclude that the search of Appellant's residence was unlawful.[4] Hence, I agree that Appellant was entitled to suppression of the evidence offered against him.

_____

[4] If Trooper Mincer had observed contraband from a lawful vantage point, I would not hesitate to conclude that he possessed both probable cause and exigent circumstances to justify entry into Appellant's trailer. The record establishes that, when Trooper Mincer looked through the window, he saw a rifle and large knives. N.T., 8/8/13 at 18, 19. He also saw small plastic bags that, in his experience, resembled heroin packets. *Id.* Moreover, a window fan blew into his face from which Trooper Mincer smelled a strong chemical odor that, in his experience, was from synthetic drugs. *Id.* at 18. Most importantly, Topper Mincer saw a person other than Appellant in the room who fled to the rear of the trailer when Trooper Ritrosky knocked at the front door. *Id.* at 15. When Appellant answered the front door, Officer Mincer asked Appellant whether anyone else was in the trailer and Appellant answered "no". *Id.* at 16. Trooper Mincer knew that was not true as he had seen the other person flee to the rear of the trailer. In my view, all of these factors established probable cause and exigent circumstances to do a protective sweep of the trailer. *See Johnson*, 68 A.3d at 944-946 (police officers who restrained defendant and conducted protective sweep of his trailer without a warrant acted with probable cause and exigent circumstances when, in response to call about drug-related activity, officers encountered an occupant of defendant's trailer who could have alerted others to officer's presence, officer's detected odor of burning marijuana while on front porch of trailer, and officer's reasonably feared destruction of evidence if defendant were permitted to re-enter trailer). Additionally, I am not bothered by the hour at which the troopers arrived at the trailer. The troopers were investigating a claim that a gun was stolen in a burglary and, at 2:10 a.m. on the date in question, they received information from a witness that Appellant had received the stolen gun in satisfaction of a debt. N.T., 8/8/13, at 5. The troopers then proceeded directly to Appellant's home
*(Footnote Continued Next Page)*

*(Footnote Continued)*

_____

where they saw lights on in the trailer and could see that a television was on. *Id.* at 6, 14. Based on this information, the troopers believed that people were awake in the trailer. *Id.* at 13. Trooper Ritrosky then knocked at the front door. These facts are very different from the facts in **Commonwealth v. Berkheimer**, 57 A.3d 171 (Pa. Super. 2012) (*en banc*), the case upon which the learned Majority relies. Majority Opinion at 7-8. In **Berkheimer**, based on a tip that a person wanted on a probation detainer may be at a specific address, troopers arrived at the appellants' home at 11:30 p.m. and noticed that the rooms were all dark and the occupants appeared to be sleeping. One of the troopers nevertheless "banged" on the front door causing the door to open. The trooper than entered the darkened home where he saw two people sleeping. *Id.* at 174-175. Clearly, the facts of the instant case are markedly different from the situation in **Berkheimer**. Considering the totality of the circumstances, I believe that it would have been permissible for Trooper Mincer to enter Appellant's trailer **if** Trooper Mincer had not entered the curtilage of Appellant's property in order to obtain the information necessary to establish probable cause and exigent circumstances.