J-A01026-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TERRENCE JOHNSON | |
| Appellant | No. 3115 EDA 2014 |

Appeal from the Judgment of Sentence June 13, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0014286-2012

BEFORE: LAZARUS, J., OTT, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OTT, J.:                    **FILED FEBRUARY 19, 2016**

Terrence Johnson appeals from the judgment of sentence entered on June 13, 2014, in the Court of Common Pleas of Philadelphia County following a stipulated bench trial. Johnson was found guilty of possession with intent to deliver, knowing and intentional possession, possession of a small amount of marijuana, and possession of drug paraphernalia.[1] He received an aggregate sentence of five to twelve years' incarceration. In this timely appeal, Johnson claims the trial court erred in failing to suppress physical evidence seized from his residence after the police forcibly entered it without a warrant. Following a thorough review of the certified record,

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 35 P.S. §§ 780-113(a)(30), (a)(16), (a)(31), and (a)(32), respectively.

submissions by the parties, and relevant law, we reverse, vacate the judgment of sentence and remand for a new trial.

Our standard of review for a challenge to the denial of a motion to suppress evidence is well settled:

> We may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. An appellate court, of course, is not bound by the suppression court's conclusions of law.

*Commonwealth v. Williams*, 125 A.3d 425, 431-32 (Pa. Super. 2015) (citation omitted).

We quote the underlying facts of this matter from the trial court opinion.

> On August 10, 2012, Philadelphia police officer Matthew Lally was in full uniform on routine patrol in a marked vehicle. At 6:00 pm, Officer Lally responded to a radio call for a "founded" or confirmed, domestic incident for a person with a gun in the area of Wayne Avenue and Windrim Street in Philadelphia. The complainant provided the following description to a police officer who interviewed the complainant in person: black male with a beard, wearing a black shirt, black pants, and carrying a firearm.[2] Three to five minutes after receiving the radio

---

[2] While the trial court's description is essentially correct, we note Officer Lally provided two slightly different descriptions of the flash information he received: (1) "a black male, was wearing all black, with a beard, was involved in a domestic assault and he was carrying a gun." N.T. Suppression Hearing, 11/22/2013, at 7, and (2) "black male, beard, black shirt, black pants, black shoes." *Id*., at 38.

- 2 -

dispatch, Officer Lally observed [Johnson] sitting on the steps of 4550 Wayne Avenue, which is one and one-half blocks from the location of where the "founded" domestic incident occurred. Officer Lally believed that [Johnson] matched the "flash" information contained in the radio call because of [Johnson's] clothing and his proximity to the "founded" call.

Because he believed that [Johnson] met the "flash" information, Officer Lally made a u-turn with his vehicle and pulled up in front of [Johnson] without using either the police lights or sirens on the vehicle. As soon as he pulled up to [Johnson] and while he was still in the vehicle, Officer Lally requested [Johnson] to "come here." At this point, Officer Lally did not brandish his firearm or otherwise threaten [Johnson]. In response to this request, [Johnson] stood up, grabbed his waistband and then ran quickly into the house at 4550 Wayne Avenue. [Johnson] closed the front door that he entered. Officer Lally and his partner then exited their vehicle and attempted to enter the house through the front door that [Johnson] entered, but the door was locked. Unable to force open the front door, the officers then ran to the rear of the property and entered the property by way of an unlocked, outside door of a one-room apartment. Once they left that room, they entered a common hallway of the apartment building. As they walked down the hallway, Officer Lally observed [Johnson] going into Apartment A1 on the first floor.

Upon observing the police officers, [Johnson] closed and locked the door to Apartment A1. Officer Lally forced open the door to Apartment A1. Upon entering the apartment, Lally placed [Johnson] into custody. After he placed [Johnson] in custody, Officer Lally observed on the floor a Pennsylvania state identification card with [Johnson's] name on it and a photograph of [Johnson]. In the same room, Officer Lally also observed in plain view (1) a clear sandwich bag on the floor that contained a green leafy substance that he immediately recognized as marijuana based upon his training and experience, and (2) a gun cleaning kit on a television stand. After conducting a criminal records check, Officer Lally learned that [Johnson] had an open warrant for absconding. [Johnson] was held for identification by

the complaining witness in the domestic incident, but he was cleared by the complaining witness.[3]

Officer Lally has worked as a police officer in the area that [Johnson] was arrested for the last 9 years. He considers this area as a high crime area known for narcotics activity and arrests for illegal firearms possession. He has personally made several VUFA arrests in the area and also is aware of numerous shootings in the area. Additionally, in his experience as a police officer, Officer Lally typically recovers firearms from the waist area. Thus, [Johnson's] grabbing of his waistband led Officer Lally to believe that [Johnson] was carrying a firearm even though he did not observe a firearm.

[Johnson's] counsel called a defense witness who denied that [Johnson] ran into the house or grabbed his waistband as he was being pursued by the officers. The defense witness had a prior conviction for *crimen falsi*. Based upon both witnesses' demeanor and manner of testifying and the defense witness'[s] prior conviction for *crimen falsi*, the trial court chose to credit Officer Lally's testimony and discredit the defense witness's testimony.

[Johnson's] house was searched after Detective Salone obtained a search warrant. Upon execution of the search warrant, Detective Salone recovered, *inter alia*, a Ziploc bag containing 408 grams of crack cocaine, 99 packets of heroin, additional baggies with marijuana, one packet of crack cocaine, a digital scale, and unused narcotics packaging.

Trial Court Opinion, 4/7/2015, at 1-3 (citations to record omitted).

The essential question presented for our review is whether the forcible entry, without a warrant, into Johnson's apartment was constitutional.[4] If

___

[3] No gun was found in the apartment.

[4] Specifically, Johnson's three arguments are: (1) Did the trial court err in determining the initial contact between Johnson and the police was a mere encounter, (2) Did the trial court err in determining the police had a reasonable suspicion to stop Johnson, and (3) did the trial court err in
*(Footnote Continued Next Page)*

- 4 -

the entry was improper, then the trial court erred in failing to suppress the evidence obtained therein. Initially, we note, "Absent probable cause and exigent circumstances, warrantless searched and seizures in a private home violate both the Fourth Amendment and Article 1 § 8 of the Pennsylvania Constitution." ***Commonwealth v. Bowmaster***, 101 A.3d 789, 792 (Pa. Super. 2014).

Further,

It is well established that "probable cause alone will not support a warrantless search or arrest in a residence ... unless some exception to the warrant requirement is also present.... [A]bsent consent or exigent circumstances, private homes may not be constitutionally entered to conduct a search or to effectuate an arrest without a warrant, **even** where probable cause exists." ***Commonwealth v. Santiago***, 736 A.2d 624, 631 (Pa. Super. 1999) (citations omitted; emphasis in original). In ***Commonwealth v. Roland***, 535 Pa. 595, 637 A.2d 269 (1994), our Supreme Court explained that "[i]n determining whether exigent circumstances exist, a number of factors are to be considered", such as,

(1) the gravity of the offense, (2) whether the suspect is reasonably believed to be armed, (3) whether there is above and beyond a clear showing of probable cause, (4) whether there is strong reason to believe that the suspect is within the premises being entered, (5) whether there is a likelihood that the suspect will escape if not swiftly apprehended, (6) whether the entry was peaceable, and (7) the time of the entry, i.e., whether it was made at night. These factors are to be balanced against one

---

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯

determining the police had probable cause to arrest Johnson and forcibly enter his residence without a warrant. ***See*** Appellant's Brief, at 7.

- 5 -

> > another in determining whether the warrantless intrusion was justified.[5]
>
> > Other factors may also be taken into account, such as whether there is hot pursuit of a fleeing felon, a likelihood that evidence will be destroyed if police take the time to obtain a warrant, or danger to police or other persons inside or outside the dwelling. Nevertheless, police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests.
>
> > **Id**. at 600, 637 A.2d at 270-71 (quotations and citations omitted).
>
> **Id.**, at 793 (Pa. Super. 2014).

Here, based upon the evidence presented at the suppression hearing, the trial court reasoned the initial contact between the police and Johnson was a mere encounter. A mere encounter does not require any level of suspicion or carry any official compulsion to stop or respond. **See Commonwealth v. Lyles**, 97 A.3d 298, 302 (Pa. 2014). Although the police did suspect Johnson to have been involved in the domestic disturbance reported over the police radio, their initial contact with Johnson, a request to step over to the police car, did not convey a message that compliance with the request was required. **Id**. Accordingly, Johnson was within his rights to ignore the request to speak with the police. Therefore, we agree with the trial court that the initial contact was a mere encounter.

However, when a person, in a high crime area, such as was described by Officer Lally, flees without apparent cause from the police, the police may

---

[5] These are known as the **Roland** factors.

briefly detain that person to conduct a *Terry*[6] search. ***See In re D.M.***, 781 A.2d 1161, 1164 (Pa. 2001) ("[I]t is evident that unprovoked flight in a high crimes area is sufficient to create a reasonable suspicion to justify a *Terry* stop under the Fourth Amendment.") A *Terry* stop allows the police, under the totality of the circumstances and with reasonable belief, to search a person to determine whether that person is armed. This represents an investigative detention. Pursuant to ***D.M.***, the unprovoked flight in a high crime area provides the reasonable suspicion of criminal activity needed to conduct an investigative detention.

Nonetheless, the trial court commented, "In response to Officer Lally's request for [Johnson] to speak to him, [Johnson] engaged in unprovoked flight, which, as discussed below, gives rise to ***probable cause to arrest him***." Trial Court Opinion, 4/7/2015, at 5 (emphasis added). ***D.M.*** and subsequent case law specifically limit police response to unprovoked flight to conducting a brief investigative detention, not to arrest. The trial court's conclusion that Johnson's retreat into his apartment building gave rise to probable cause to arrest him is, accordingly, an error of law.

The trial court also determined that the totality of the circumstances gave the police probable cause to believe Johnson was armed. In support, the trial court cited the following cases:

---

[6] ***Terry v. Ohio***, 392 U.S. 1 (1981).

> ***Commonwealth v. Taggart***, 997 A.2d 1189 (Pa. Super. Ct. 2010) (an officer's observation of an individual carrying a handgun on public streets in the city of Philadelphia gives rise to probable cause for an arrest); and ***Commonwealth v. Bowmaster***, 101 A.3d 789 (Pa. Super. Ct. 2014) (stating in dicta that (1) a reliable tip from a known source, and (2) the belief that defendant was in possession of a firearm provided probable cause).

Trial Court Opinion, at 7.

We find both of these cases are distinguishable and neither provides support for a warrantless forced entry into a residence. In ***Taggart***, the police actually observed the defendant in possession of a gun. Here, the police specifically denied seeing Johnson possess a gun. Rather, the police had a reasonable suspicion Johnson was armed, which would have allowed them to conduct a ***Terry*** stop, but not to arrest him. In ***Bowmaster***, the tip from the reliable source was what provided the reasonable belief the defendant possessed a stolen weapon. Additionally, in ***Bowmaster***, not only did the tipster affirmatively state he had seen the stolen gun, there was no question about the identity of the suspect. As stated in *dicta*, this gave rise to probable cause to obtain a search warrant for the residence, not to arrest Bowmaster. Significantly, ***Bowmaster*** held that the information possessed by the police was insufficient to support a warrantless nighttime entry into Bowmaster's residence.

Beyond the lack of probable cause, the police also lacked exigent circumstances. Initially, we remember that the "police bear a heavy burden

when attempting to demonstrate an urgent need that might justify warrantless searches or arrests." ***Bowmaster***, ***supra***.

Accordingly, we examine the **Roland** factors. (1) *The nature of the crime*. The flash report indicated only that the alleged victim was assaulted in some manner and that the perpetrator had a gun. There is no indication the perpetrator used the gun in the assault or threatened the alleged victim with the gun. (2) *Reasonable belief the suspect is armed*. The police possessed a reasonable suspicion that Johnson was armed based upon the flash report and his actions in adjusting his waist band. (3) *Was there an above and beyond a clear showing of probable cause.* The evidence presented at the suppression hearing would have allowed the police to conduct a **Terry** stop and to conduct an investigative detention to determine if the alleged victim could identify Johnson as her assailant. This does not equate to above and beyond a clear showing of probable cause either to arrest Johnson or to search his residence. (4) *Was there a strong reason to believe Johnson was in the premises.* The police witnessed Johnson entering the apartment. They absolutely knew he was within the premises. (5) *Was there a likelihood Johnson would escape.* The trial court merely stated Johnson could have escaped, but set forth no facts to support that determination. The evidence demonstrated the police were standing outside the only door out of the apartment. The evidence showed no reason why someone could not have stood outside to make sure Johnson did not climb out a window. (6) *Was the entry peaceable.* The entry was not peaceable.

Officer Lally testified he did not knock on the door and request entry. He did not explain why they wanted to talk to Johnson. Officer Lally simply forced his way into the apartment, breaking through a locked door. (7) *Was the entry at night.* The entry was affected in the evening.

Pursuant to **Bowmaster**, the trial court also considered these: (1) was there hot pursuit of a fleeing felon, and (2) was there a likelihood evidence would be destroyed. The trial court noted the officers were in hot pursuit. However, as noted above, there was no clear indication a felony had been committed. The evidence presented at the suppression hearing indicated no probable cause to arrest Johnson, but only reasonable suspicion to conduct a **Terry** stop. Next, the trial court stated, without reference to the record, that the suspected firearm was likely to be hidden or destroyed.[7] Whether the evidence might be hidden is not a factor to be considered; proper consideration is given to whether the evidence might be destroyed. **See Bowmaster**, **supra**. The record is silent as to how Johnson might have destroyed the suspected handgun while in his room.

The trial court also noted concern for the safety of others. However, there was no evidence the perpetrator of the alleged assault threatened the victim with the gun. Johnson did not threaten the police in any manner,

---

[7] This is all hypothetical, as there was no gun.

much less with a gun. There was no evidence of any other person within the premises who may have been in danger, had Johnson been armed.

The evidence viewed in the light most favorable to the Commonwealth indicates that the police had reasonable suspicion to briefly detain Johnson to see if the alleged victim of the assault could identify him as her assailant and to frisk him to see if he was armed. The police had no probable cause to arrest Johnson. We also conclude there were no exigent circumstances to overcome the constitutional requirement to obtain a search warrant. Accordingly, we do not believe the evidence is sufficient to meet the heavy burden of demonstrating an urgent need to conduct a warrantless forced entry in Johnson's residence. As such, the trial court erred in denying Johnson's motion to suppress evidence. All of the evidence obtained from Johnson's apartment was fruit of the poisonous tree and was inadmissible.[8] Because the evidence obtained from Johnson's apartment was the only evidence against him, judgment of sentence against Johnson cannot stand.

Judgment of sentence vacated. Case remanded for a new trial. Jurisdiction relinquished.

---

[8] "Evidence obtained as a result of an unlawful search is subject to the fruit of the poisonous tree doctrine. The United States Supreme Court has stated that any material, tangible, or verbal evidence "obtained either during or as a direct result of an unlawful invasion" is inadmissible at trial. ***Wong Sun v. United States***, 371 U.S. 471, 485, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)." ***Commonwealth v. Loughnane***, ___ A.3d ___, 2015 PA Super 245, at *7 (11/23/2015).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/19/2016