J-S04039-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellee, :
:
v. :
:
DAVON TERRELL WYATT, :
:
Appellant : No. 545 WDA 2015

Appeal from the Judgment of Sentence March 5, 2015,
in the Court of Common Pleas of Allegheny County,
Criminal Division, at No(s): CP-02-CR-0016452-2014.

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellee, :
:
v. :
:
DAVON TERRELL WYATT, :
:
Appellant : No. 831 WDA 2015

Appeal from the Judgment of Sentence March 5, 2015,
in the Court of Common Pleas of Allegheny County,
Criminal Division, at No(s): CP-02-CR-0007362-2014.

BEFORE: BOWES, OLSON, and STRASSBURGER*, JJ.

MEMORANDUM BY STRASSBURGER, J.: **FILED MAY 04, 2016**

Davon Terrell Wyatt (Appellant) appeals from the judgments of

sentence imposed following his convictions for persons not to possess a

_____

* Senior Judge assigned to the Superior Court.

firearm, possession of a firearm without a license, tampering with physical evidence, escape, and disorderly conduct. We affirm.

The trial court aptly summarized the relevant factual and procedural history of this matter as follows.

> On May 20, 2014, Detective Sergeant Mark Steele of the City of McKeesport police department and his partner, Detective Sergeant Adam Alfer, were working a crime suppression detail in McKeesport, Allegheny County. They were patrolling the 600 block of Sixth Street, near the McKeesport Towers apartment complex, in an unmarked police vehicle. At 10:58 P.M., as the officers drove toward the corner of Sixth and Huey Streets, Detective Steele noticed three males standing under a tree. This raised his suspicion because there had recently been several robberies in the area, and the men were standing with two men facing the third man, who had his hood pulled entirely over his head, obscuring his face. Detective Steele stopped and parked his vehicle at the corner of Sixth and Huey Streets to approach the males and determine if everything was okay. As he exited his vehicle, Detective Steele called for back-up because there were three men and only two officers.

> Upon approaching the males, Detective Steele recognized one of the men as James Wilson, whom he knew from working in the area, which made his suspicion level decrease. In response to Detective Steele's question, James Wilson told Detective Steele that everything was okay. This exchange occurred as the second police car arrived with two more officers, including Sergeant Michael Rydzak.

> As the second patrol vehicle arrived on the scene and the officers opened the vehicles doors, Appellant walked backwards and grabbed for the front of his waistband. As Appellant backed up, Detective Steele asked him if he was okay. In response, Appellant ran between the two police vehicles and fled on foot through an adjacent parking lot.

> Detective Steele and Sergeant Rydzak pursued Appellant on foot through the parking lot of the apartment complex, during which Appellant was never more than 25-30 feet ahead of Detective Steele. The foot pursuit lasted for one and a half to

- 2 -

two minutes over the course of several blocks. As Detective Steele was pursuing Appellant, Allegheny County District Attorney Detective Peter Gerbach, who had responded to the call for back-up, drove his unmarked police vehicle to the end of the block and cut off Appellant's path of travel. With Detective Gerbach's arrival, Appellant removed a silver firearm from his waistband with his right arm and threw it over the fence that was part of the local YMCA grounds. After throwing the firearm, Appellant turned and ran back towards Detective Steele. Detective Steele ordered Appellant to the ground, and [Appellant] complied. Appellant was detained and placed into a squad car. Sergeant Rydzak went behind the fence of the YMCA parking lot and recovered the firearm. The firearm was still warm to the touch, and was depressing the grass in an otherwise overgrown area about 10-15 feet from the edge of the parking lot where Appellant abruptly ended his flight.

* * *

Appellant was charged by criminal information (CC 201407362) with one count each of: persons not to possess a firearm, carrying a firearm without a license, tampering with physical evidence, escape, and disorderly conduct.

Appellant filed a suppression motion on August 20, 2014. A suppression hearing was held on December 10, 2014, after which the [trial court] denied the motion.

The persons not to possess a firearm charge was severed from the remaining charges and assigned a new CC number (CC 201416452). Appellant proceeded to a jury trial on that charge on December 16-17, 2014. At the conclusion of the trial, Appellant was found guilty of persons not to possess a firearm.

On March 5, 2015, Appellant pled guilty to the remaining charges at 201407362. Appellant was sentenced … as follows:

CC 201416452 count one: persons not to possess a firearm - four to eight [years'] incarceration;

CC 201407362 count two: carrying a firearm without a license - two and a half to five [years'] incarceration, to run concurrent to the period of incarceration imposed at CC 201416452.

- 3 -

On April 2, 2015, Appellant filed a timely notice of appeal at CC 201416452.

On May 14, 2015, Appellant petitioned the Pennsylvania Superior Court to amend the notice of appeal to include both CC 201416452 and CC 201407362. This petition was denied and Appellant was ordered to file an appeal *nunc pro tunc* with the [trial court].

On May 15, 2015, Appellant filed an appeal *nunc pro tunc* at CC 201407362 with the [trial court], which the [trial court] granted on May 19, 2015.

On May 26, 2015, Appellant filed a second appeal at CC 201407362. On June 4, 2015, Appellant filed a motion for consolidation at CC 201407362 and CC 201416452 with the Superior Court, which was granted on June 16, 2015. [Both Appellant and the trial court complied with Pa.R.A.P. 1925.]

Trial Court Opinion, 8/26/2015, at 2-7 (footnotes and unnecessary capitalization omitted).

On appeal, Appellant asks this Court to consider whether the trial court erred in denying his motion to suppress. Appellant's Brief at 6. Specifically, Appellant claims that his seizure by police was not supported by the requisite level of suspicion and all evidence obtained following the illegal seizure should have been suppressed. *Id.* at 14. We consider Appellant's claim mindful of the following standard of review.

Our analysis of this question begins with the presumption that where a motion to suppress has been filed, the burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible. If the trial court denies the motion, we must determine whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. In so doing, we may consider only the evidence of the prosecution and so much

- 4 -

of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Bowmaster*, 101 A.3d 789, 792 (Pa. Super. 2014) (citations and quotations omitted).

Appellant contends that no reasonable person would have felt free to leave under the circumstances of his encounter with police; thus, he was subject to an illegal investigatory detention. Appellant's Brief at 24.

> Article I, § 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution both protect the people from unreasonable searches and seizures. Jurisprudence arising under both charters has led to the development of three categories of interactions between citizens and police. The first, a "mere encounter," does not require any level of suspicion or carry any official compulsion to stop or respond. The second, an "investigative detention," permits the temporary detention of an individual if supported by reasonable suspicion. The third is an arrest or custodial detention, which must be supported by probable cause.
>
> In evaluating the level of interaction, courts conduct an objective examination of the totality of the surrounding circumstances. We are bound by the suppression court's factual findings, if supported by the record; however, the question presented—whether a seizure occurred—is a pure question of law subject to plenary review.

*Commonwealth v. Lyles*, 97 A.3d 298, 302-03 (Pa. 2014) (citations and quotations omitted).

"To determine whether a mere encounter rises to the level of an investigatory detention, we must discern whether, as a matter of law, the

- 5 -

police conducted a seizure of the person involved." ***Commonwealth v. Reppert***, 814 A.2d 1196, 1201 (Pa. Super. 2002).

> To decide whether a seizure has occurred, a court must consider all the circumstances surrounding the encounter to determine whether the demeanor and conduct of the police would have communicated to a reasonable person that he or she was not free to decline the officer's request or otherwise terminate the encounter. Thus, the focal point of our inquiry must be whether, considering the circumstances surrounding the incident, a reasonable [person] innocent of any crime, would have thought he was being restrained had he been in the defendant's shoes.

***Commonwealth v. Tam Thanh Nguyen***, 116 A.3d 657, 664-65 (Pa. Super. 2015) (citation omitted).

Instantly, the trial court concluded that the initial interaction between the officers and Appellant was a mere encounter. Trial Court Opinion, 8/26/2015, at 8-9. This conclusion is supported by the record, which indicates that Detective Steele and his partner, concerned about recent robberies in the area, exited their vehicle to speak with Appellant and two other men standing near the rear door to a senior citizens' home. N.T., 12/10/2014, at 9, 20. The detectives were wearing shirts which identified themselves as police officers and had their badges displayed. ***Id.*** at 8. Detective Steele testified that, although he was initially concerned because of Appellant's attire and location in proximity to the other men, his "suspicion level went down" because he recognized one of the men. ***Id.*** at 19-20. The detectives spoke with the men, asking if everything was "ok" while noting the recent string of robberies. ***Id.*** at 23.

J-S04039-16

However, once backup arrived, Detective Steele testified that the situation became more tense. When the second police car pulled up, and before those officers exited their vehicle, Appellant began to back away. *Id.* at 10, 21. Detective Steele asked if Appellant was ok, at which point Appellant grabbed his waistband, turned, and ran. *Id.* at 10, 21-23. Based on the totality of the circumstances, the trial court concluded that the previous mere encounter had escalated to an investigative detention once Appellant grabbed his waistband and fled the scene and officers gave chase. Trial Court Opinion, 8/26/2015, at 9. We agree.

It is well-established that "unprovoked flight in a high crime area is sufficient to create a reasonable suspicion to justify a *Terry*[1] stop under the Fourth Amendment." *In re D.M.*, 781 A.2d 1161, 1164 (Pa. 2001). In this case, Appellant's unprovoked flight, coupled with his grabbing at his waistband and backing away from officers, provided sufficient reasonable suspicion to justify an investigatory stop. Accordingly, based on the totality of the circumstances, we find no error in the trial court's denial of Appellant's suppression motion.

Judgments of sentence affirmed.

Judge Bowes joins.

Judge Olson concurs in the result.

---

[1] *Terry v. Ohio*, 392 U.S. 1 (1968).

- 7 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/4/2016