J. A34007/14

2015 PA Super 245

COMMONWEALTH OF PENNSYLVANIA,  :    IN THE SUPERIOR COURT OF
                                     :          PENNSYLVANIA
                 Appellant    :
                                       :
                    v.          :          No. 596 MDA 2014
                                     :
DANIEL F. LOUGHNANE          :

Appeal from the Order Entered March 17, 2014,
in the Court of Common Pleas of Luzerne County
Criminal Division at No. CP-40-CR-0000046-2013

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN AND STABILE, JJ.

OPINION BY FORD ELLIOTT, P.J.E.:        **FILED NOVEMBER 23, 2015**

This case concerns the hit and run fatality of Rebecca Marian McCallick.  Herein, the Commonwealth appeals from the order of March 17, 2014, which granted in part and denied in part Daniel Loughnane's ("appellee's") motion **in limine**.[1]  We affirm in part and reverse in part and remand for further proceedings.[2]

---

[1] Appellee's motion was titled "Motion in Limine to Exclude Evidence Relating to Telephone Recordings and Personal Belongings."  It was properly treated by the trial court as a suppression motion.

[2] The Commonwealth may appeal an interlocutory order suppressing evidence when it provides a certification with its notice of appeal that the order terminates or substantially handicaps the prosecution. **Commonwealth v. Whitlock**, 69 A.3d 635, 636 n.2 (Pa.Super. 2013), citing Pa.R.A.P. 311(d).  In **Commonwealth v. Gordon**, 673 A.2d 866, 869 (Pa. 1996), our supreme court held that the Commonwealth may appeal the grant of a defense motion **in limine** which excludes Commonwealth evidence and has the effect of substantially handicapping the prosecution.

The facts, as summarized by the suppression court, are as follows:

1. On July 24, 2012, at approximately 2:23 a.m., Wilkes-Barre City Police responded to the area of 199 Hazle Street and began an investigation into the death of an individual who had been struck and killed by a motor vehicle.

2. The individual struck and killed on Hazle Street during the early morning hours of July 24, 2012 was identified as Rebecca McCallick.

3. Officer James Fisher of the Wilkes-Barre City Police Department responded to the scene and interviewed a witness, John Schenck, III.

4. A description of the vehicle that struck Ms. McCallick was obtained from John Schenck, III by Officer Fisher.

5. John Schenck, III described the vehicle as a "large, dark colored truck with loud exhaust, possibly a diesel."

6. Officer Fisher provided the description of the vehicle he received from John Schenck, III to other patrol units in the area in an attempt to locate the vehicle.

7. On July 24, 2012, Peter Sladin was employed by Legion Security and was working in the Hawkeye Camera Center, which is located in the Wilkes-Barre City Police Station.

8. During the early morning hours of July 24, 2012, Mr. Sladin was monitoring the Hawkeye camera system in the City of Wilkes-Barre.

---

As the trial court ruling excludes Commonwealth evidence, and the Commonwealth has certified that the effect of the ruling substantially handicaps the prosecution, we find that this appeal is properly before this court.

9. While monitoring the camera system, Mr. Sladin heard that an accident had occurred at 199 Hazle Street as well as a description of the vehicle involved.

10. Mr. Sladin began reviewing cameras in the area of 199 Hazle Street to see if he could locate the vehicle he had heard a description of.

11. While reviewing a camera located at Northampton Street and Wilkes-Barre Boulevard, Mr. Sladin observed a "dark colored full size pickup truck heading south on Wilkes-Barre Boulevard" at approximately 2:19 a.m.

12. Mr. Sladin took a snapshot of the vehicle from the video and provided it to Wilkes-Barre City Police.

13. The photograph fairly and accurately depicted the image of the vehicle Mr. Sladin saw on the video and had not been altered.

14. There is no evidence to suggest that any member of the Wilkes-Barre City Police Department altered the photograph of the vehicle Mr. Sladin obtained from the video.

15. On July 25, 2012, the investigation of the accident was assigned to Wilkes-Barre City Detective, David Sobocinski.

16. As part of his investigation, Detective Sobocinski requested all videos, photographs or other evidence from Hawkeye.

17. The Hawkeye camera system only preserves the videotapes for a period of 10 to 14 days.

18. Prior to Detective Sobocinski's request, the videotape containing the image of the pickup

truck was taped over by the Hawkeye camera system.

19. Although attempts were made to recover the video from which the photograph had been generated, it could not be done.

20. At no time was the video intentionally erased or deleted.

21. Nothing in the record indicates that the Commonwealth withheld any evidence favorable to [appellee].

22. Detective Sobocinski received the photograph of a pickup truck heading south on Wilkes-Barre Boulevard which he did not alter in any manner.

23. On July 24, 2012, John Schenck, III, resided at 197 Hazle Street in Wilkes-Barre, Pennsylvania and his girlfriend at the time was Rebecca McCallick.

24. At the time the vehicle struck Rebecca McCallick, John Schenck, III was in the front room of his apartment looking out the window.

25. John Schenck, III saw the vehicle strike Rebecca McCallick on Hazle Street in Wilkes-Barre during the early morning hours of July 24, 2012.

26. John Schenck, III called 911 and reported the accident.

27. The photograph of a pickup truck was viewed by John Schenck, III and he indicated that it fairly and accurately depicted the vehicle that struck Rebecca McCallick.

28. A vehicle fitting the description of the pickup truck that struck Rebecca McCallick was located by the father of John Schenck, III on

August 8, 2012 in a driveway at 71 Liberty Street, Ashley, Pennsylvania.

29. John Schenck, III then positively identified the vehicle located in the driveway at 71 Liberty Street, Ashley as the pickup truck that struck Rebecca McCallick.

30. Although he attempted to do so, Detective Sobocinski of the Wilkes-Barre City Police Department was unable to locate the owner of the vehicle.

31. During the early morning hours of August 9, 2012, the pickup truck was seized from the driveway at 71 Liberty Street in Ashley and towed to Wilkes-Barre City Police headquarters and placed in the basement garage.

32. No search warrant was obtained before the pickup truck was seized from the driveway located at 71 Liberty Street in Ashley.

33. Detective Sobocinski of the Wilkes-Barre City Police Department could have requested assistance from law enforcement to secure the pickup truck while he obtained a search warrant prior to seizing the vehicle.

34. Nothing prevented Detective Sobocinski from obtaining a search warrant prior to the seizure of the pickup truck on August 9, 2012.

35. Although the pickup truck was seized on August 9, 2012, no search warrant was prepared until August 13, 2012.

36. The pickup truck was not searched until a search warrant was obtained by Detective Sobocinski.

37. At the time [appellee's] pickup truck was seized without a warrant, the vehicle was

located on private property and [appellee] was not in custody.

38. Visual identification of [appellee's] pickup truck in the Wilkes-Barre City garage on August 14, 2012 by John Schenck, III, occurred four days after the vehicle was seized without a warrant.

39. This identification by John Schenck, III may have taken place before or after a search warrant was obtained and the vehicle searched.

40. On August 14, 2012, four days after the vehicle was seized without a warrant, a sound identification was performed on the vehicle on State Street outside the Wilkes-Barre City Police Department.

Findings of fact and conclusions of law, 3/17/14 at 1-5.

Appellee was arrested on December 18, 2012, and charged with one count of accidents involving death or personal injury, 75 Pa.C.S.A. § 3742(a). On July 30, 2013, appellee filed an omnibus pretrial motion, which included the following:

1. A motion in limine to exclude all "still photographs of the vehicle traveling toward the scene . . . at the time of the incident" based on the Commonwealth's inability to authenticate security videotapes as mandated by Pa.R.E. 901;

2. A motion in limine to exclude all "still photos of the vehicle traveling toward the scene . . . at the time of the incident" based upon the Commonwealth's inability to comply with the best evidence rule;

. . . .

4. A motion to suppress all "still photos of the vehicle traveling toward the scene . . . at the time of the incident" based upon the Commonwealth's failure to disclose exculpatory evidence;

5. A motion to suppress seizure of appellee's 2006 Ford F-350 pickup truck as well as items seized from the vehicle;[3]

6. A motion to strike/suppress out of court identification of appellee's Ford F-350 pickup truck as unduly suggestive;

7. A motion to suppress investigators "controlled test drive" resulting in the sound identification of appellee's Ford F-350 pickup truck as unduly suggestive;

8. A motion in limine to exclude the audio version of the 9-1-1 call made by Schenck;

9. A motion for an individual voir dire;

10. A motion to suppress inflammatory photographs.

*See* Docket #21.

A hearing was held on February 18, 2014; and on March 17, 2014, the suppression court entered an order granting the motion in part and denying the motion in part. (Docket #27.) The suppression court held the only Commonwealth witness that could authenticate the still photos of the vehicle on the videotape was Schenck; Sladin was prohibited from providing any testimony of his observations of the video. The court granted appellee's

---

[3] We note that the resulting search did not reveal any evidence sought to be used at trial.

motion concerning the seizure of the truck and all items seized. The court also granted appellee's motion and suppressed evidence regarding the out-of-court identification and the sound identification of appellee's truck. The suppression court granted the motion ***in limine*** to exclude the audio version of the 911 call made by Schenck. The court reserved ruling on the motion to suppress inflammatory photographs until the time of trial.

On March 27, 2014, another pre-trial conference was held, and the Commonwealth asked for clarification regarding the court's order in terms of the testimony of Sladin. The court responded:

> Mr. Sladin could testify that the photo was obtained from the video system. He can't testify to the time or location of the vehicle in the photo because the tape was not able to be provided to the defense and the tape is no longer -- he watched the tape -- So it's my ruling that the photo -- he could testify that the photo comes from the Hawkeye system but he will not be allowed to testify as to the place and time of the photo or the vehicle in the photo.

Notes of testimony, 3/27/14 at 2-3. The Commonwealth filed a notice of appeal on March 28, 2014. On May 22, 2014, the suppression court referred this court to its March 17, 2014 findings of fact and conclusions of law in lieu of an opinion pursuant to Pa.R.A.P. 1925(a)(1).

The Commonwealth presents the following issues for our review:

> 1. Did the Court err when it excluded testimony from Peter Sladin about Commonwealth Exhibit # 1 when it found the security tapes and still photos were not authenticated

pursuant to Pennsylvania Rule of Evidence 901 or otherwise violated the Best Evidence Rule?

2.     Did the Court err when it found there were no exigent circumstances which justified the warrantless seizure of [appellee's] truck and therefore suppressed the visual and audio identification of the truck by Mr. Schenck as fruit of the poisonous tree?

3.     Did the Court err when it excluded the audio of the 911 call by John Schenck, III on July 24, 2012 at 2:23 a.m.?

Appellant's brief at 4.

We begin by noting our well-settled standard of review:

When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Miller*, 56 A.3d 1276, 1278-1279 (Pa.Super. 2012) (citations omitted), *appeal denied*, 70 A.3d 810 (Pa. 2013).

The Commonwealth contends that the suppression court erred by not allowing Sladin, who was working the camera system on the night in question and captured the actual image, to identify the truck in the photograph. (Appellant's brief at 13.) The Commonwealth argues that the exhibit does not fall under the requirement of the best evidence rule and

avers Sladin's testimony about the location of the camera that took the picture is relevant to placing appellee near the scene of the crime at the time the victim was hit. (*Id.* at 14-15.) Further, Sladin could authenticate the photograph by testifying to the process he used to obtain the photograph he gave to the police.

We first address whether the trial court was correct in holding that the best evidence rule does not apply to the photograph in question. The Pennsylvania Rules of Evidence require that an original recording or photograph be produced in order to "prove its content." Pa.R.E. 1002. The Rules, however, also include exceptions in cases where an original is lost or destroyed, so long as the original was not destroyed as the result of the proponent acting in bad faith. Pa.R.E. 1004(a); *Warren v. Mosites Construction Co.*, 385 A.2d 397, 400 (Pa.Super. 1978) (*en banc*) (stating that unavailability cannot be the fault of the proponent). In such cases, the proponent is not required to produce the original. *Id.*

In cases where the best evidence rule is at issue, and an original cannot be produced by the proponent, the proponent must provide evidence that the original has indeed been lost or destroyed. *McCormick on Evidence* § 237 (7th ed. 2013). This court has previously stated that whenever the original is lost, a diligent search must be conducted in order to locate the original. *Hera v. McCormick*, 625 A.2d 682, 687 (Pa.Super.

1993). When the original cannot be located, "production of the original is excused and other evidence becomes admissible." *Id.*

Appellee cites *Commonwealth v. Lewis*, 623 A.2d 355 (Pa.Super. 1993), in his argument that the videotape in this case should be subject to the best evidence rule. In *Lewis*, the Commonwealth sought to introduce testimony regarding the contents of surveillance video based on a police officer having watched the video before apprehending the defendant. *Id.* at 356-357. This court found that such evidence was inadmissible because "the explanation concerning the unavailability of the tape was unsatisfactory." *Id.* at 359. *Lewis* is distinguishable from the instant case because the videotape in *Lewis* was available and the Commonwealth had failed to procure it.[4] *Id.*

We find *Commonwealth v. Dent*, 837 A.2d 571 (Pa.Super. 2003), to be analogous to the present case. In *Dent*, the Commonwealth sought to introduce testimony regarding the contents of surveillance video. *Id.* at 590. Much like the current case, the tape was unavailable at trial because the store's surveillance system was computerized and the system automatically recycled the tape. *Id.* This court stated that since the tape was unavailable at trial, the best evidence rule did not apply. *Id.* at 591.

---

[4] The videotape at issue in *Lewis* was stored in the basement of the Sears store in question. The Sears security officer testified that he was unable to locate the tape because the storage classification system that was used by Sears was "imprecise." *Id.*

In the instant case, we find that the original videotape was not destroyed as the result of bad faith on the Commonwealth's part. Moreover, we are bound by the suppression court's findings of fact, which indicate that the video was erased as a result of Legion Security's routine practices, that the tape was erased before the Wilkes-Barre police requested a copy, and that the tape was not intentionally erased. (Findings of fact and conclusions of law, 3/17/14 at 3.)

Therefore, the suppression court was correct in holding that the best evidence rule does not apply to the photograph in question.

We next turn to whether the suppression court erred by not permitting Sladin to testify as to the photograph's authenticity. Appellee states that because the video is not available, there is no way to tell when the screenshot was captured or what is depicted in the screenshot. Specifically, appellee claims that while the Commonwealth purports the screenshot of a truck travelling southbound on Wilkes-Barre Boulevard was captured at 2:19 a.m., the top of the screenshot shows the time of 6:19 a.m. (Appellee's brief at 28-29.)

The Pennsylvania Rules of Evidence require a proponent to "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a). Specifically, the Rules state that testimony of a "witness with knowledge" may testify that an item is what it is claimed to be. *Id.* at 901(b)(1); ***Commonwealth v. Reid***, 811 A.2d 530, 552 (Pa.

2002). When the evidence in question is a photograph, it may be authenticated by testimony from a person who has sufficient knowledge that the photograph fairly and accurately reflects what the proponent is purporting that photograph to reflect. **Nyce v. Muffley**, 119 A.2d 530, 532 (Pa. 1956). The Rules also allow a witness to describe the process or system that produces a particular piece of evidence for the purposes of authentication. Pa.R.E. 901(b)(9).

In the instant case, Sladin has sufficient knowledge of what is depicted in the photograph so that he would be able to authenticate it pursuant to Rule 901(b)(1). During his testimony at the suppression hearing, Sladin indicated that as soon as he was notified that the police were investigating a hit-and-run that involved a fatality, he started reviewing cameras in the general vicinity of the incident, looking for any vehicles that fit the description he was given.[5] (Notes of testimony, 2/18/14 at 12-13.) Upon finding video of a "dark-colored full-size pickup truck heading south on Wilkes-Barre Boulevard," Sladin took a screenshot of what he determined was the best viewing area of the truck. (**Id.** at 14-15.) Sladin further testified that the screenshot depicted a fair and accurate representation of his observations from the morning of July 24, 2012. (**Id.** at 15.) Finally, Sladin provided information as to the process of how he obtained a

---

[5] Sladin received via police radio a report that police were looking for a dark full-size pickup truck. (Notes of testimony, 2/18/14 at 22.)

screenshot depicting the truck at 2:19 a.m. by describing the timeline present on his monitor at the time he took the screenshot. (*Id.* at 16.)

Based on Sladin's testimony at the suppression hearing, we conclude that he will be able to authenticate the photograph pursuant to Pa.R.E. 901(b)(1) and (9). Sladin has knowledge of what the photograph depicts and can also testify about the process that he used to procure a screenshot of the truck, and Sladin can also testify as to the image's authenticity because he has knowledge of what the image depicts. Accordingly, we reverse on this issue and Sladin is permitted to testify in order to authenticate the photograph. Any issue as to the time discrepancy of the photograph is a matter of weight to be tested at trial, not of admissibility.

Next, the Commonwealth avers that the suppression court erred when it suppressed audio and visual identifications of appellee's truck by Schenck on the grounds that the truck was illegally seized.[6] Specifically, the Commonwealth argues that appellee lacked a reasonable expectation of privacy in his driveway and that exigent circumstances existed to justify the warrantless seizure and impoundment of the truck until a search warrant could be obtained.

---

[6] We note that constitutionally, there is no difference between seizing a vehicle before obtaining a warrant to conduct a search and conducting an immediate search without a warrant. *Chambers v. Maroney*, 399 U.S. 42, 52 (1970).

Both the United States Constitution and the Pennsylvania Constitution guarantee that individuals shall not be subject to unreasonable searches or seizures.

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

Pa. Const. Art. I, § 8. A search or seizure conducted without a warrant is, under the Fourth Amendment and Article I, Section 8, presumed to be unreasonable. *Commonwealth v. McCree*, 924 A.2d 621, 627 (Pa. 2007) (citations omitted).

Evidence obtained as a result of an unlawful search is subject to the fruit of the poisonous tree doctrine. The United States Supreme Court has stated that any material, tangible, or verbal evidence "obtained either during or as a direct result of an unlawful invasion" is inadmissible at trial. *Wong Sun v. United States*, 371 U.S. 471, 485 (1963).

Our supreme court further stated:

> We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."

*Commonwealth v. Cunningham*, 370 A.2d 1172, 1176-1177 (Pa. 1977), quoting *Wong Sun*, 371 U.S. at 487-488.

Pennsylvania courts have recognized that the protections afforded to individuals under both the Fourth Amendment and Article I, Section 8 are applicable to the curtilage of a person's home. *Commonwealth v. Bowmaster*, 101 A.3d 789, 792 (Pa.Super. 2014) (citations omitted). This court defined the curtilage of the home as places "where the occupants have a reasonable expectation of privacy that society is prepared to accept." *Id.* citing *Commonwealth v. Johnson*, 68 A.3d 930, 935 n.3 (Pa.Super. 2013) (citations omitted).

Curtilage, however, has not been extended to an individual's driveway. *Commonwealth v. Simmen*, 58 A.3d 811, 815 (Pa.Super. 2012). In determining that the driveway is not part of a residence's curtilage, this court, citing the trial court in *Simmen*, noted that no reasonable expectation of privacy existed because the car at issue "was parked in plain view of the street on the driveway, within 20 feet of the road," and the driveway was not gated, fenced in, or posted with "no trespassing" signs. *Id.* at 816.

At the time of the suppression court's order, both probable cause and "exigent circumstances beyond mere mobility" were required in order to conduct a warrantless search of the truck. *See Commonwealth v. Hernandez*, 935 A.2d 1275, 1280 (Pa. 2007). Shortly after the suppression court's order at issue in the instant case, the Pennsylvania Supreme Court adopted the federal automobile exception in *Commonwealth v. Gary*, 91 A.3d 102 (Pa. 2014).[7] In order to conduct a warrantless search of an automobile, the police must now establish probable cause, and are no longer required to establish exigent circumstances "beyond the mere mobility of a motor vehicle." *Id.* at 138. Historically, automobiles have been subject to an exception from the Fourth Amendment's warrant requirement for two reasons: (1) the inherent mobility of the vehicle; and (2) a vehicle's owner's expectation of privacy is "significantly less than that relating to one's home or office." *Id.* at 110, quoting *California v. Carney*, 471 U.S. 386, 391 (1985).

The facts of this case create a matter of first impression in Pennsylvania. It is unclear whether the federal automobile exception, as

---

[7] While *Gary* was decided after the suppression court had issued its order and accompanying findings of fact and conclusions of law, we note that appellate courts are bound to follow the law at the time of the appellate decision, thus we are required to apply the holding in *Gary* to the facts of the instant case. *Blackwell v. Commonwealth, State Ethics Com'n*, 589 A.2d 1094, 1099 (Pa. 1991), citing *Commonwealth v. Cabeza*, 469 A.2d 146, 148 (Pa. 1983).

adopted by *Gary*, applies to vehicles that are parked in driveways of private residences, as here.

In a case where the facts are analogous to the present case, the Massachusetts Supreme Judicial Court held that police were not required to obtain a warrant to seize a defendant's vehicle that was parked in the defendant's driveway. *Commonwealth v. A Juvenile (No. 2)*, 580 N.E.2d 1014, 1017 (Mass. 1991).[8] Specifically, the court stated that the defendant did not have an expectation of privacy because both the car and the driveway were, "clearly visible from the public way, the driveway was the normal route by which to approach the front door of the residence, . . . and

---

[8] The Massachusetts Supreme Judicial Court adopted the federal automobile exception in 1990. *Commonwealth v. Cast*, 556 N.E.2d 69, 78 (Mass. 1990) (acknowledging that a vehicle's mobility can create an exigency). *See also Commonwealth v. Motta*, 676 N.E.2d 795, 799 (Mass. 1997). The relevant provision in the Massachusetts Declaration of Rights prohibiting unreasonable searches and seizures is very similar to Pennsylvania's constitutional protections against unreasonable search and seizure.

> Every subject has a right to be secure from all unreasonable searches, and seizures, of his person, his houses, his papers, and all his possessions. All warrants, therefore, are contrary to this right, if the cause or foundation of them be not previously supported by oath or affirmation; and if the order in the warrant to a civil officer, to make search in suspected places, or to arrest one or more suspected persons, or to seize their property, be not accompanied with a special designation of the persons or objects of search, arrest, or seizure; and no warrant ought to be issued but in cases, and with the formalities prescribed by the laws.

Mass. Const. Pt. I, Art. XIV.

the owner of the automobile had taken no other steps to conceal the parked automobile from public view." *Id.* at 1016. *See also United States v. Blaylock*, 535 F.3d 922, 926-927 (8th Cir. 2008) (holding that a warrantless search of a car parked in the defendant's driveway was subject to the federal warrant exception), *cert. denied*, 558 U.S. 830 (2009); *Keehn v. State*, 279 S.W.3d 330, 336 (Tex. Crim. App. 2009) (holding that the federal automobile exception applies to automobiles parked in a private driveway).[9]

In the instant appeal, appellee claims that he had an expectation of privacy in his driveway. (*See* appellee's brief at 43.) The facts of this case, however, do not indicate that a reasonable expectation of privacy exists here. Much like the defendants in *Simmen* and *A Juvenile*, appellee's truck was visible on the driveway in plain view from the street. Specifically, Schenck's father observed the truck parked in appellee's driveway and noted that it matched a description of the truck provided by Schenck. (Notes of testimony, 2/18/14 at 160-161.) Schenck was then subsequently able to identify the truck. (*Id.* at 161.) Since the truck was visible in plain view from the street while parked in appellee's driveway, appellee did not have a reasonable expectation of privacy in his driveway.

---

[9] Texas adopted the federal automobile exception in *Keehn*. *Id.* at 335. The provision of the Texas Constitution prohibiting unreasonable searches and seizures is virtually identical to Article I, Section 8 of the Pennsylvania Constitution, *supra*. *See* Tex. Const. Art. I, § 9.

Appellee also claims that the Commonwealth does not adequately demonstrate that there were exigent circumstances justifying the warrantless seizure of appellee's truck. Specifically, appellee argues that the police being unable to procure personnel to secure the truck while a warrant was pending, in addition to weather concerns that the police may have had, were not grounds for exigent circumstances. (Appellee's brief at 44-46.) The suppression court agreed with appellee, determining that no exigent circumstances existed to justify a warrantless seizure of appellee's truck. (Findings of fact and conclusions of law, 3/17/14 at 11.) In light of our supreme court's recent decision in **Gary**, we hold that the mere mobility of the truck itself is adequate for a finding of exigent circumstances, and that the Commonwealth has met its burden in demonstrating that exigent circumstances existed at the time the truck was seized. We further hold that **Gary** applies to vehicles parked in driveways at private residences, because driveways are not part of a home's curtilage, and an individual does not have a reasonable expectation of privacy over the driveway. **See Simmen**, **supra** at 815. We note that in its findings of fact and conclusions of law, the suppression court did not reach a determination on whether the Commonwealth adequately demonstrated probable cause. We therefore remand to the suppression court so that a probable cause determination can be made.

Our third and final issue for review is whether the trial court erred by excluding the audio recording of Schenck's 911 call.

> [T]he admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. Admissibility depends on relevance and probative value. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact. Evidence, even if relevant, may be excluded if its probative value is outweighed by the potential prejudice.

*Commonwealth v. Fransen*, 42 A.3d 1100, 1106 (Pa.Super. 2012), *appeal denied*, 76 A.3d 538 (Pa. 2013) (citations omitted). *See also Commonwealth v. Jordan*, 65 A.3d 318, 325 (Pa. 2013), *cert. denied*, 134 S.Ct. 1275 (2014) (discusses the balancing of evidentiary value against potential dangers of unfair prejudice and inflaming the passions of the jury).

This court, in a previous case determining whether an audio recording of a 911 call was admissible, applied the same balancing test that is applied to other forms of demonstrative evidence. *Commonwealth v. Groff*, 514 A.2d 1382, 1384 (Pa.Super. 1986), *appeal denied*, 531 A.2d 428 (Pa. 1987). Our supreme court provided a balancing test for trial courts to consider for the admission of potentially inflammatory evidence:

> First a trial court must determine whether the [demonstrative evidence] is inflammatory. If not, it may be admitted if it has relevance and can assist the jury's understanding of the facts. If the [demonstrative evidence] is inflammatory, the trial court must decide whether or not the [demonstrative

> evidence is] of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors.

*Commonwealth v. Johnson,* 42 A.3d 1017, 1033-1034 (Pa. 2012), *cert. denied*, 133 S.Ct. 1795 (2013) (considering photographs) (citations omitted). We find *Groff* to be analogous because the 911 recording in that case contained screams of a murder victim and her children. *Id.*

In the instant appeal, the Commonwealth seeks to introduce an audio recording of the 911 call placed by Schenck from July 24, 2012. There is no dispute that the recording of the call, in which Schenck witnessed McCallick being run over by a truck, is relevant. Sounds from McCallick are audible on the recording, which defense counsel claims could potentially "curry empathy and sympathy from the jury." (Notes of testimony, 2/18/14 at 236.) The Commonwealth claims that Schenck's state of mind must be understood, as he was an eyewitness to the incident. (*Id.* at 237.)

Here, we find that the suppression court did not abuse its discretion when it suppressed the audio recording of Schenck's call to 911. Much like the 911 recording in *Groff*, the 911 recording here contains sounds emanating from Ms. McCallick, who had just been hit by a pickup truck. Such sounds run a very high risk of inflaming the jury's passions as contemplated in *Johnson*. Furthermore, any probative value of an audio recording of Schenck's 911 call would be significantly outweighed by its potential prejudicial value, particularly when a transcript of the 911 call is

available for use at trial.  Therefore, the suppression court did not err when it held that the audio version of Schenck's 911 call was inadmissible for trial, and we affirm the suppression court's order on this issue.

Order reversed in part and affirmed in part.  Case remanded for further proceedings.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/23/2015