J. A34007/14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | No. 596 MDA 2014 |
| | : | |
| DANIEL F. LOUGHNANE | : | |

Appeal from the Order Entered March 17, 2014,
in the Court of Common Pleas of Luzerne County
Criminal Division at No. CP-40-CR-0000046-2013

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN AND STABILE, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:　　　**FILED FEBRUARY 21, 2018**

This case comes before us on remand from the Supreme Court of Pennsylvania for further consideration consistent with its opinion.  ***See Commonwealth v. Loughnane***, 173 A.3d 733, 746 (Pa. 2017). Specifically, our supreme court directed us to determine whether exigent circumstances existed, permitting the police to enter Daniel F. Loughnane's (hereinafter, "appellee") driveway and seize his Ford F-350 pickup truck without a warrant.  Upon careful review, we affirm the suppression court's order as it pertains to the suppression of any evidence obtained from appellee's truck.[1]

---

[1] Upon our initial review, we also considered whether the suppression court erred when it excluded testimony pertaining to security tapes and still photographs and whether the suppression court abused its discretion when it suppressed the audio recording of John Schenk, III's 911 call.

As we noted in our initial opinion, the applicable standard of review is well settled.

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Miller*, 56 A.3d 1276, 1278-1279 (Pa.Super. 2012) (citations omitted), quoted by *Loughnane*, 128 A.3d at 812.

> Both the United States Constitution and the Pennsylvania Constitution guarantee that individuals shall not be subject to unreasonable searches or seizures.
>
>> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
>
> U.S. Const. amend. IV.
>
>> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and

---

*Commonwealth v. Loughnane*, 128 A.3d 806, 812 (Pa.Super. 2015). Our supreme court denied *allocatur* as to these issues. *Commonwealth v. Loughnane*, 158 A.3d 1224 (Pa. 2016).

seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

Pa. Const. Art. I, § 8. A search or seizure conducted without a warrant is, under the Fourth Amendment and Article I, Section 8, presumed to be unreasonable. **Commonwealth v. McCree**, 924 A.2d 621, 627 (Pa. 2007) (citations omitted).

Evidence obtained as a result of an unlawful search is subject to the fruit of the poisonous tree doctrine. The United States Supreme Court has stated that any material, tangible, or verbal evidence "obtained either during or as a direct result of an unlawful invasion" is inadmissible at trial. ***Wong Sun v. United States***, 371 U.S. 471, 485 (1963).

Our supreme court further stated:

We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."

***Commonwealth v. Cunningham***, 370 A.2d 1172, 1176-1177 (Pa. 1977), quoting ***Wong Sun***, 371 U.S. at 487-488.

Pennsylvania courts have recognized that the protections afforded to individuals under both the Fourth Amendment and Article I, Section 8 are applicable to the curtilage of a person's home.

> ***Commonwealth v. Bowmaster***, 101 A.3d 789, 792 (Pa.Super.2014) (citations omitted). This court defined the curtilage of the home as places "where the occupants have a reasonable expectation of privacy that society is prepared to accept." ***Id.*** citing ***Commonwealth v. Johnson***, 68 A.3d 930, 935 n. 3 (Pa.Super. 2013) (citations omitted).

***Loughnane***, 128 A.3d at 815-816.

In 2014, our supreme court adopted the federal automobile exception in ***Commonwealth v. Gary***, 91 A.3d 102 (Pa. 2014). The federal automobile exception permitted the police to conduct a warrantless search on a vehicle upon the establishment of probable cause; however, it was no longer necessary to demonstrate exigent circumstances "beyond the mere mobility of the vehicle." ***Id.*** at 138.

In the instant case, our supreme court held that the federal automobile exception did not apply to appellee's truck when it was parked on his private residential driveway, as the driveway constituted curtilage. ***See Loughnane***, 173 A.3d at 745. In light of our supreme court's holding, the Commonwealth must demonstrate both probable cause and exigent circumstances beyond the mere mobility of the vehicle in order to seize a vehicle from an individual's private driveway without a warrant. Accordingly, we must now determine whether the Commonwealth demonstrated exigent circumstances beyond the mere mobility of appellee's truck.

When determining whether exigent circumstances exist, several factors must be considered, including "a likelihood that evidence will be

destroyed if police take the time to obtain a warrant." ***Commonwealth v. Lee***, 972 A.2d 1, 4 (Pa.Super. 2009), quoting ***Commonwealth v. Roland***, 637 A.2d 269, 270-271 (Pa. 1994). "Moreover, this Court has observed that, 'the Commonwealth must present clear and convincing evidence that the circumstances surrounding the opportunity to search were truly exigent, [] and that the exigency was in no way attributable to the decision by police to forego seeking a warrant.'" ***Id.***, quoting ***Commonwealth v. Rispo***, 487 A.2d 937, 940 (Pa.Super. 1985).

The Commonwealth argues that the following exigent circumstances justified seizing appellee's truck without a warrant:

> [not knowing] the whereabouts of [appellee;] not getting cooperation from [appellee's] family, friends and employers about his whereabouts; [the police] had been made aware that a spare set of the keys were in the toolbox of the vehicle readily available to anyone who decided to remove it; [and the police] did not have additional law enforcement available to sit on the vehicle and was concerned that evidence on the vehicle may be compromised by the weather.

Commonwealth's brief at 21.

A reading of the suppression hearing testimony belies the Commonwealth's assertion of exigent circumstances. Wilkes-Barre City Police Department Detective David Sobocinski testified that he received a phone call notifying him of the presence of the truck in appellee's driveway on the afternoon of August 8, 2012. (Notes of testimony, 2/18/14 at 169.) Detective Sobocinski further testified that he was not able to simultaneously

- 5 -

secure the truck and obtain a search warrant, as the process of obtaining a warrant would take approximately 2-3 hours. (*Id.* at 169-170.) Due to rain in the forecast for the evening of August 8, 2012, Detective Sobocinski decided to seize the truck without a warrant and called the Wilkes-Barre city tower and directed him to tow the truck to the Wilkes-Barre city garage. (*Id.* at 167-168; 171.) Detective Sobocinski testified that the truck was not actually seized until the early morning hours of August 9, 2012. (*Id.* at 184-185; 199.)

Detective Sobocinski further testified that he originally requested a uniformed Wilkes-Barre police officer to "stand by," but Detective Sobocinski failed to specifically ask for coverage for the purposes of securing the truck while a search warrant was obtained.[2] (*Id.* at 175-176.) Detective Sobocinski also failed to ask the police officer sent by the neighboring Hanover Police Department to secure the truck while he obtained a search warrant. (*Id.* at 178.)

Based on the record before us, we find that the Commonwealth failed to establish clear and convincing evidence of exigent circumstances that would justify seizing appellee's truck without a warrant. While Detective Sobocinski testified that the threat of rain in the weather forecast

---

[2] Detective Sobocinski testified that it is common practice for a detective in plain clothes to have a uniformed officer present to "stand by" to show a visible police presence and because "people feel more comfortable when a police car is there." (*Id.* at 175.)

for the evening of August 8, 2012[3] necessitated the truck to be seized without a warrant, the truck was not actually seized until the early morning hours of August 9, 2012. Such a delay in the seizure of the truck belies the Commonwealth's argument that a search warrant could not be obtained in a timely manner because Detective Sobocinski testified that it would only take 2-3 hours to obtain a warrant. The record establishes that Detective Sobocinski could have obtained a search warrant in the time between when he was notified of the truck's location and the time the truck was actually seized. Additionally, we agree with the suppression court's conclusion that Detective Sobocinski could have requested law enforcement assistance to secure the truck while he obtained a search warrant.

In our initial opinion, we remanded to the suppression court for a determination of whether the police established probable cause to seize appellee's truck without a warrant. **Loughnane**, 128 A.3d at 817. Because we have determined that the Commonwealth failed to demonstrate that there were exigent circumstances that would justify seizing appellee's truck without a warrant, this issue is now moot.

We, however, also reversed the part of the suppression court's order in which the suppression court did not permit Peter Sladin, an employee of Legion Security monitoring the Hawkeye Camera Center on the night of the incident, to testify as to the place and time of a still photograph that Sladin

---

[3] The incident central to this case took place on July 24, 2012.

took from video surveillance cameras[4] in the area of 199 Hazle Street in Wilkes-Barre, Pennsylvania. ***See id.*** at 809, 812. We held that Sladin would be able to authenticate the photograph pursuant to Pa.R.E. 901(b)(1) and (9), and that he should be permitted to testify. ***Id.*** at 814. We, therefore, vacate the suppression court's March 17, 2014 order and remand for further proceedings consistent with this memorandum.

Order affirmed in part and reversed in part.[5] Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/21/2018

---

[4] The Hawkeye camera system only preserves video footage for 10-14 days. At no point was the video intentionally erased or deleted. ***Id.*** at 810.

[5] ***See id.*** at 814-815, 818.