J-S53004-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARCOS RIVERA | : | |
| | : | |
| Appellant | : | No. 1283 EDA 2018 |

Appeal from the Judgment of Sentence March 19, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0002226-2016,
CP-51-CR-0013004-2015, CP-51-CR-0013006-015

BEFORE:  OLSON, J., STABILE, J., and NICHOLS, J.

MEMORANDUM BY OLSON, J.:                              **FILED NOVEMBER 26, 2019**

Appellant, Marcos Rivera, appeals from the judgment of sentence entered on March 19, 2018, as made final by the denial of a post-sentence motion on April 9, 2018, following his jury trial convictions of multiple crimes arising from the sexual abuse of three juvenile victims.  Specifically, regarding all three victims, D.M.1, D.M.2, and S.C., the jury found Appellant guilty of indecent assault,[1] corruption of minors,[2] and unlawful contact with a minor.[3]  In addition, the jury convicted Appellant for rape of a child[4] (S.C.).  We affirm.

---

[1] 18 Pa.C.S.A. § 3126(a)(7).

[2] 18 Pa.C.S.A. § 6301(a)(1)(ii).

[3] 18 Pa.C.S.A. § 6318(a)(1).

[4] 18 Pa.C.S.A. § 3121(c).

On November 4, 2015, the Philadelphia Police Department filed two criminal complaints against Appellant arising from his sexual abuse of D.M.1 and D.M.2. Criminal Complaints, 11/4/15, at 1-2. Thereafter, on December 28, 2015, the police filed another criminal complaint against Appellant, this time relating to his sexual abuse of S.C., his niece. Criminal Complaint, 12/28/15, at 1-2. The Commonwealth filed separate bills of information on January 5, 2016, and March 9, 2016.

In the information docketed at CP-51-CR-0013006-2015 (hereinafter, Docket Number 3006-2015), the Commonwealth charged Appellant with the following crimes against D.M.1: (1) unlawful contact with a minor, (2) corruption of minors, (3) indecent assault of a person less than 13, (4) indecent exposure, and (5) endangering the welfare of children. Criminal Information, 1/5/16, 1-2.

In the information docketed at CP-51-CR-0013004-2015 (hereinafter, Docket Number 3004-2015), the Commonwealth charged Appellant with the following crimes against D.M.2: (1) involuntary deviate sexual intercourse ("IDSI") by forcible compulsion, (2) unlawful contact with a minor, (3) corruption of minors, (4) indecent assault of a person less than 13, (5) indecent exposure, and (6) endangering the welfare of children. Criminal Information, 1/5/16, 1-2.

In the information docketed at CP-51-CR-0002226-2016 (hereinafter, Docket Number 2226-2016), the Commonwealth charged Appellant with the following crimes against S.C.: (1) rape by forcible compulsion, (2) IDSI by

forcible compulsion, (3) unlawful contact with a minor, (4) endangering the welfare of children, (5) corruption of minors, (6) indecent assault of a person less than 13, (7) indecent exposure, (8) rape of a child, (9) IDSI with a person less than 16, and (10) IDSI with a child. Criminal Information, 3/9/16, 1-2. The Commonwealth alleged that Appellant committed the above-listed crimes over the course of ten years, beginning January 1, 2006. *Id.*

On August 8, 2016, the Commonwealth filed a motion, pursuant to Pennsylvania Rule of Criminal Procedure 582, to join the separate informations for trial. Within the motion, the Commonwealth claimed that joinder was proper because "the facts of each case would be introduced at the trial of the other" and "there is no risk of jury confusion." Commonwealth's Motion to Join Informations, 8/8/16, at 4 and 11; *see also* Pa.R.Crim.P. 582(A)(1)(a). Specifically, the Commonwealth argued that Appellant engaged in "striking[ly] similar" sexual conduct with the three children as to "reveal a common plan, scheme or design." *Id.* at 4. The Commonwealth set forth the following similarities:

> (1) each victim was under [the] age [13]; (2) two of the victims were assaulted by [Appellant] during roughly the same time period (August 2015 – October 2015); (3) each assault included [Appellant] placing his penis on or in some part of the complainant's body and touching the chest of the complainant; (4) two of the victims were assaulted in virtually the same way, specifically [Appellant] would place his penis on the back of the victims; (5) each victim was assaulted at the same location, [Appellant's home]; (6) each victim was alone with [Appellant] when he assaulted them; (7) each assault included [Appellant] telling the complainants not to tell anyone.

*Id.* at 8. In addition, the Commonwealth argued that evidence of the assaults would be admissible to prove Appellant's motive, intent, and to "refute any defense evidence of accident or fabrication by the victims." *Id.* at 4 and 8-10.

On September 22, 2016, a hearing was held regarding the Commonwealth's motion. During the hearing, Appellant argued that joinder was improper because the alleged criminal conduct was too dissimilar and it would cause unfair prejudice. N.T. Pre-Trial Hearing, 9/22/16, at 14-18. On that same day, the trial court granted the Commonwealth's motion to join all three informations for trial. Trial Court Order, 9/22/16, at 1.

Appellant's jury trial commenced October 4, 2017. The trial court separately summarized the testimony of each complainant as follows.

**Complainant D.M.1**

D.M.1 was born [i]n June [ ], 2006, and the acts alleged by D.M.1 took place when the minor was around nine[-]years[-]old. D.M.1 became acquainted with [] Appellant because he lived in [his] neighborhood and was best friends with [] Appellant's son, [J.]. Between April and October 2015, D.M.1 frequently went to [] Appellant's home . . . to play with [J.]. Sometimes, D.M.1's brother, D.M.2, would accompany D.M.1 on his visits to [] Appellant's home. D.M.1 testified that during the summer of 2015, [] Appellant lured D.M.1 into the kitchen, took off his shirt, and rubbed his penis on D.M.1's bare back; D.M.1 reported that this behavior happened on more than one occasion. D.M.1 also testified that on more than one occasion, [] Appellant forced D.M.1 to his knees before putting his penis in D.M.1's mouth. During one particular incident, [] Appellant put his penis in D.M.1's mouth and told him to "take his milk out." During that same incident, [] Appellant gripped D.M.1's hand around his penis and moved D.M.1's hand back and forth until he ejaculated. [] Appellant then told D.M.1 not to tell anyone. D.M.1 recalled another incident in which [] Appellant [removed] D.M.1's pants and rubbed and

squeezed D.M.1's bare buttocks with his hands. Afterwards, [] Appellant told D.M.1 not to tell anyone and gave him [$20.00].

## Complainant D.M.2

D.M.2 was born [i]n February [ ], 2004 and was [11-years-old] when the following incident occurred. Between April and October of 2015, D.M.2 became acquainted with [] Appellant because his younger brother, D.M.1, was best friends with [] Appellant's son, [J.]. Occasionally, D.M.2 and D.M.1 would both go to [] Appellant's home to play with [J.]. At trial, D.M.2 described an incident when [] Appellant pulled up D.M.2's shirt and rubbed his hands on the front of D.M.2's bare chest and on his bare back. The incident occurred while D.M.2 and [] Appellant were sitting on the couch playing video games. Both [J.] and D.M.1 were present, sitting on the floor in front of the couch, when [] Appellant started to touch [D.M.2]. D.M.2 testified that [] Appellant groped and licked D.M.2's nipples. Afterwards, [] Appellant pulled D.M.2 into the kitchen, where he pulled D.M.2's pants down and told him to pull down his underwear; a command to which D.M.2 complied. [] Appellant then took off his pants and underwear and started rubbing his penis against D.M.2's bare back. As [] Appellant rubbed himself against the minor, he told D.M.2 not to tell anyone. D.M.2 testified that the episode ended abruptly – after D.M.1 started to walk into the kitchen.

## Complainant S.C.

S.C. testified to multiple instances of sexual abuse by [] Appellant, spanning over the course of ten years. S.C. was born [i]n January [ ], 2000. [] Appellant is her uncle by marriage (he married her aunt, [M.R.]). Growing up, S.C. was very close with [] Appellant's stepdaughter and would frequently visit and spend the night at [] Appellant's home. S.C. testified that when she was around five or six years old, while she was visiting [] Appellant's home, [] Appellant touched her breast and rubbed her vagina with his hands, both over and under her clothing. She also testified that he would often wait for opportunities to be alone with S.C., so he could kiss her on her mouth and neck.

On two separate occasions, when S.C. was six or seven years old, [] Appellant tried to force his penis into S.C.'s body, [causing her to scream and tell Appellant that it hurt]. During one of the incidents, [] Appellant took her into his stepdaughter's bedroom, laid her down on her back, and pulled her pants down. He told her she was pretty and tried to force his penis into her vagina.

S.C. testified that she screamed, and [] Appellant eventually stopped. During a separate incident, [] Appellant, again, took S.C. into his stepdaughter's room, bent her over the bed, and pulled her pants down. S.C. testified that she begged [] Appellant to stop, to no avail. Despite S.C.'s pleas, [] Appellant tried to anally penetrate S.C. with his penis. S.C. testified that she pushed [] Appellant away multiple times before she could get him away from her. S.C. also testified that on a separate occasion, she was showering at [] Appellant's home when [] Appellant entered the bathroom, completely undressed, and got into the shower with her. [] Appellant rubbed his hands over S.C.'s bare breasts and body and rubbed his penis and finger against her vagina.

Finally, S.C. testified that at some point when S.C. was [15-years-old], [] Appellant had a private conversation with S.C. in his car. During this conversation, [] Appellant kissed S.C. and told her that he missed her and wanted to have a future and kids with her. S.C. testified that other instances of abuse occurred when she was around [15]. Specifically, S.C. stated that, on several occasions, [] Appellant made her "jerk him off with [her] hand" and put his penis in her mouth. S.C. recalled a particular instance when [] Appellant called S.C. into the kitchen and expressly asked her to put her mouth on his penis. S.C. told him, "[n]o," to which he responded, "come on it will be fast," and forced her to put her mouth on his penis until he ejaculated.

Finally, S.C. testified that she did not immediately disclose [] Appellant's abuse because he was like a father figure to her – "he was there for [her] when [her] dad was [not]. . . . [and she] loved him as [her] dad." S.C. also viewed [] Appellant as a "fun uncle because he would often pick up S.C. and her siblings and take them out for the day." She also testified that she was afraid of [] Appellant because he threatened to hurt her family if she told anyone about the abuse.

Trial Court Opinion, 1/25/19, at 3-6 (internal citations omitted).

On October 13, 2017, the jury found Appellant guilty of the above-mentioned crimes. *Id.* at 1. On March 19, 2018, the trial court sentenced Appellant to an aggregate sentence of 28 to 56 years' of incarceration, followed by 21 years' of reporting probation. *Id.* On March 20,

2018, Appellant filed a post-sentence motion to modify his sentence, which the trial court denied on April 9, 2018. Appellant's Motion for Modification of Sentence, 3/20/18, at 1-4; Trial Court's Order, 4/9/18, at 1. This timely appeal followed.[5]

Appellant raises the following issue on appeal:

Did the trial court err in granting the Commonwealth's September 5, 2017 motion for joinder of the cases involving S.C. [] with the cases involving complainants D.M.1 and D.M.2 under Pa.R.Crim.P. 582 as the evidence of S.C.'s offenses would not have been admissible in a trial on the other offenses and *vice versa*?

Appellant's Brief at 3.

On appeal, Appellant argues that the trial court abused its discretion by granting the Commonwealth's motion to join all three informations for trial. *Id*. at 16. Specifically, Appellant contends that the cases relating to D.M.1 and D.M.2 were "separate and distinct" from S.C.'s case, such that the

---

[5] We note that Appellant only filed a single notice of appeal, listing all three docket numbers: Criminal Information Nos. 3004-2015, 3006-2015, and 2226-2016. In **Commonwealth v. Walker**, 185 A.3d 969, 977 (Pa. 2018), our Supreme Court held that, "where a single order resolves issues arising on more than one docket, separate notices of appeal must be filed for each of those cases." Appellant, however, filed his notice of appeal on May 3, 2018. Because our Supreme Court declared that **Walker** should apply only prospectively after June 1, 2018, Appellant's appeal is not subject to quashal. On May 14, 2018, the trial court entered an order directing Appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b)(1). Appellant timely complied. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on January 25, 2019.

"offenses were not part of a common plan, scheme, or design."[6]  ***Id***.  We disagree.

"Whether or not separate indictments [or informations] should be consolidated for trial is within the sole discretion of the trial court and such discretion will be reversed only for a manifest abuse of discretion or prejudice and clear injustice to the defendant." ***Commonwealth v. Keaton***, 729 A.2d 529, 537 (Pa. 1999) (internal quotations and citations omitted). "An abuse of discretion is not merely an error of judgment. Rather, discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record." ***Commonwealth v. Flor***, 998 A.2d 606, 620 (Pa. 2010) (internal quotations and citations omitted).

Joinder of criminal informations for trial is governed by Pennsylvania Rule of Criminal Procedure 582, which provides, in relevant part:

> Offenses charged in separate indictments or informations may be tried together if:
>
> (a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger or confusion; or
>
> (b) the offenses charged are based on the same act or transaction.

---

[6] Appellant also argues that the evidence of the sexual assaults was not admissible to prove motive, intent, or to refute evidence of accident or fabrication by the victims.  ***See*** Appellant's Brief at 31-34.  Because we conclude that joinder was proper in view of the common plan or scheme provision of the Pennsylvania Rule of Evidence 404(b), we need not address these alternative arguments on appeal.

Pa.R.Crim.P. 582 (A)(1). Further, Pennsylvania Rule of Criminal Procedure 583 declares: "[t]he court may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together." Pa.R.Crim.P. 583.

In this case, it is undisputed that the crimes against D.M.1, D.M.2, and S.C. were not based upon the same act or transaction. Thus, the three criminal informations could only be joined for trial if the requirements of Rule 582(A)(1)(a) are satisfied.

We agree with the trial court that the evidence of the respective offenses would have been admissible in separate trials under Pennsylvania Rule of Evidence 404(b). As Rule 404(b) provides, evidence of crimes, wrongs or other acts, while not admissible to show mere propensity, "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2). Although not included within the enumerated list of permissible uses in Rule 404(b)(2), other acts evidence may be admitted to assist in "proving the existence of a common scheme[.]" *Commonwealth v. Arrington*, 86 A.3d 831, 842 (Pa. 2014).

As this Court has explained:

When ruling upon the admissibility of evidence under the common plan exception, the trial court must first examine the details and surrounding circumstances of each criminal incident to assure that

- 9 -

the evidence reveals criminal conduct which is distinctive and so nearly identical as to become the signature of the same perpetrator. Relevant to such a finding will be the habits or patterns of action or conduct undertaken by the perpetrator to commit crime, as well as the time, place, and types of victims typically chosen by the perpetrator. Given this initial determination, the court is bound to engage in a careful balancing test to assure that the common plan evidence is not too remote in time to be probative. If the evidence reveals that the details of each criminal incident are nearly identical, the fact that the incidents are separated by a lapse of time will not likely prevent the offer of the evidence unless the time lapse is excessive.

\*\*\*

[Moreover, a]lthough remoteness in time is a factor to be considered in determining the probative value of other crimes evidence under the theory of common scheme, plan or design, the importance of the time period is inversely proportional to the similarity of the crimes in question.

***Commonwealth v. Tyson***, 119 A.3d 353, 358–359 (Pa. Super. 2015)

(internal quotations and citations omitted).

In this case, the trial court addressed the matter of consolidation as

follows:

From the Commonwealth's perspective . . . they are seeking to join these cases to show common plan, scheme and design[.]

\*\*\*

All three of the children - - all of these allegations concern children under the age of 13. Two are very close in age, one is 9 and one is 11. I believe those are the brothers[.] And then the niece - - the [incidents in her case spanned a] wider range of age from 6 to 13. But still prepubescent. Certainly 9 and 11 are clearly similar in ages for the bothers, and they are related.

All three children are coming to [Appellant's] house for the same purpose, to play with [Appellant's children]. I can appreciate what the defense is saying he is not in a custodial relationship, but he is the adult in charge for that home for all three children, two

- 10 -

brothers and the niece, are coming to play with [Appellant's children]. That's identical.

The allegations are not identical, but they are similar. They are sexual in nature. One isn't like a sexual abuse and then one is a sexual assault. They are all three concerned with sexual assault, and indeed with two of the complainant's the charges of the allegations are very similar about [Appellant] placing his private parts on the back - - up and down the back of the child. So that's identical.

\*\*\*

[Appellant] gained the trust of these three children and their parents who allowed these children to come to the house to play. And I appreciate what the defense said the statement of don't tell anyone is very similar in all these cases that are brought before [the court]. It is not necessarily in all cases, but in this case all three were allegedly told don't tell anyone.

\*\*\*

The allegations are similar. The cases [do not] require identical exact allegations in each case for consolidation to be appropriate.

N.T. Pre-Trial Hearing, 9/22/16, at 19-23.

Upon review, we agree with the trial court's determination that the facts of each case established a common plan, scheme, or design. In particular, the fact that all three children came into Appellant's home and custodial care for a similar purpose – to play with his son and stepdaughter – and the abuse occurred in the home is sufficient to reveal "criminal conduct which is distinctive and so nearly identical as to become the signature of the same perpetrator." *Tyson*, 119 A.3d at 358–359. In view of the consistent abuse pattern that emerges from the evidence in this case, the evidence as to each victim was admissible to show a common plan or scheme, and we conclude

that the trial court did not abuse its discretion in finding that the first prong of Rule 404(b)(2) was satisfied.

As to the second prong of Rule 404(b)(2), we conclude that the trial court did not abuse its discretion in finding that the probative value of the other crimes evidence outweighed any potential for unfair prejudice.

"Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact." **Commonwealth v. Loughnane**, 128 A.3d 806, 817–818 (Pa. Super. 2015). Evidence, even if relevant, may be excluded if its probative value is outweighed by the danger of unfair prejudice. **See id.**; Pa.R.E. 403. "Unfair prejudice" means "a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." Pa.R.E. 403 cmt. Further, in weighing the probative value of the evidence against its danger of unfair prejudice, "the court must balance the potential prejudicial impact of the evidence with such factors as the degree of similarity established between the incidents of criminal conduct, the Commonwealth's need to present evidence under the common plan exception, and the ability of the trial court to caution the jury concerning the proper use of such evidence by them in their deliberations." **Commonwealth v. Frank**, 577 A.2d 609, 614 (Pa. Super. 1990).

On appeal, Appellant asserts that the joinder resulted in prejudice because he was "confounded in presenting [inconsistent] defenses" and the

jury used each case to "corroborate the others and infer guilt in the aggregate." Appellant's Brief at 36.

In the case at bar, the evidence of Appellant's crimes against each victim was highly probative in establishing how he came into contact with the children, the methods he employed to isolate the victims before perpetrating each assault, and the tactics he employed to conceal his crimes. As noted above, the facts surrounding Appellant's sexual abuse of D.M.1, D.M.2, and S.C. were very similar, "distinctive and so nearly identical as to become the signature of the same perpetrator." *Tyson*, 119 A.3d at 358–359. In addition, the evidence was vital to the Commonwealth since there was no physical evidence of, or witnesses to, Appellant's sexual abuse.

Moreover, the danger of unfair prejudice was relatively low in this case, given that D.M.1, D.M.2, and S.C.'s testimony was easily separable and the trial court instructed the jury that they were to

> consider the cases as separate individual cases . . . just as you would if each case were to be tried alone for you. Once again, you are trying three separate cases at one time and, for this reason, you have to pay especially close attention to the evidence as though to be able to properly segment it. You can consider with respect to each offense the evidence presented in support of the other [incidents] for the limited purpose of establishing [Appellant's] pattern or scheme, his intent, motive, and state of mind, and to rebut any claim of fabrication. You must not regard this evidence as showing that [Appellant] is a person of bad character or has criminal tendencies on which you might be inclined to infer guilt.

N.T. Trial, 10/10/17, at 210-211.

We thus conclude that the trial court did not abuse its discretion in concluding that the probative value of the other crimes evidence would far outweigh any potential for unfair prejudice. Since evidence relative to each victim was admissible in separate trials under Rule 404(b), the first prong of Rule 582(A)(1)(a) is met.

Finally, the second prong of Rule 582(A)(1)(a) was also satisfied in this case because "the evidence of each of the offenses ... [wa]s capable of separation by the jury so that there [wa]s no danger of confusion." Pa.R.Crim.P. 582(A)(1)(a). First, both D.M.1 and D.M.2 were young boys at the time of the assaults, while S.C. is a girl. Second, the sexual assaults, while there was some overlap, transpired at different times. Specifically, Appellant's sexual assaults against D.M.1 and D.M.2 occurred from April through October 2015, while Appellant's sexual assault against S.C. occurred from 2006 through 2015. Lastly, all three victim's testified separately in the case and on different days. In particular, S.C. testified on October 4, 2017, while D.M.1 and D.M.2 testified on October 5, 2017. Thus, there was little to no danger that the jury would be confused by the joinder of the offenses into a single trial.

We, therefore, conclude that the trial court did not abuse its discretion in consolidating the two criminal informations for trial.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/26/19