**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| WILLIAM ROBERT WINKELMAN | : | |
| | : | |
| Appellant | : | No. 608 WDA 2022 |

Appeal from the Judgment of Sentence Entered January 24, 2022
In the Court of Common Pleas of Clearfield County Criminal Division at
No(s): CP-17-CR-0000358-2021

BEFORE: STABILE, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:            **FILED: APRIL 26, 2023**

William Robert Winkelman (Winkelman) appeals from the January 24, 2022 judgment of sentence imposed by the Court of Common Pleas of Clearfield County (trial court) following his convictions for sexual assault, two counts of aggravated assault, strangulation, terroristic threats, unlawful restraint, three counts of simple assault and three counts of harassment.[1] We affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3124.1, 2702(a)(1), 2718(a)(1), 2706(a)(1), 2902(a)(1), 2701(a)(1) & 2709(a)(1).

**I.**

We glean the following facts from the certified record. In December 2020, Jennifer Winkelman (the victim) reported three instances of abuse by her husband, Winkelman, to the Pennsylvania State Police (PSP). The first incident occurred on December 25, 2018, when Winkelman grabbed the victim by her hair and dragged her around their apartment. He hit her head on the stove, a cedar chest, a love seat, the kitchen table, a garbage can and the dryer. He then punched her multiple times in the face and kicked her in the side and her stomach while she was in the fetal position. The victim provided photos of the injuries to her face and side to the PSP. One of the photos had been taken by Winkelman and the other was taken by the victim's daughter. The victim did not report the incident at the time because she was afraid.

The second incident occurred on February 10, 2019. On that occasion, Winkelman became angry after looking through the victim's cell phone. She attempted to run out of their home and he pulled her back by the hair and wrapped his arm around her throat. He began to punch her and pushed her onto the floor, facedown, and sat on top of her with his arm around her throat and knee on her back while choking her. He then choked her with the cord of their vacuum cleaner and said that he was going to kill her and then himself. The victim was struggling to breathe, and he held her hands behind her back when she tried to pull the cord off of her neck. The victim produced photos of the injuries to her neck and wrists that resulted from this incident.

The third incident occurred on the evening of December 31, 2019 through the early morning of January 1, 2020. The victim woke up to Winkelman screaming at one of her friends on the phone, saying that the victim was "dead" and that "it was his fault." N.T., 10/5/21, at 58. He pulled the victim out of bed by her hair while she attempted to calm him down. She briefly broke free and ran into the bathroom but he followed her in before she could lock the door. He began to hit her head into the mirror until it broke. During the altercation he found a knife that the victim had hid in the bathroom for protection. He pointed the knife at her and told her that if she did not clean up the mirror before he returned in the morning he would kill her. While pointing the knife at her, Winkelman then told the victim to go into the bedroom. He told her that he wanted to have sex and that if she tried to leave the room, he would kill her. He then kept the knife within reach while she had sex with him. The victim produced photos of the injuries to her shoulder and upper arm and a photo of the broken mirror. One of her friends had taken the photos of her injuries and she took the photo of the mirror herself.

The victim initially reported the abuse to PSP Trooper Craig Hooven in March 2020. She did not seek medical attention or report the incidents when they occurred because she was afraid of Winkelman, even though she moved out of their shared home for a week or two on a couple of occasions. She and Winkelman married in June 2019 after the first two incidents. The victim had abused drugs several years prior to the incidents and began using again a

couple of months after the third incident, but said that she was not using illegal drugs at the time of the reported incidents. She was in treatment and taking medication for bipolar disorder.

The victim did not bring the photos of her injuries to the initial meeting and did not provide them to Trooper Hooven until approximately nine months later, in December 2020. When he took her statement in March 2020, Trooper Hooven observed that the victim appeared to be using methamphetamine, but she denied drug use at that time. He did not file charges against Winkelman until receiving the photos of the victim's injuries but he could not verify when the photos were taken. In her initial statement, the victim specifically referenced an incident in February but did not provide dates for the other incidents. Trooper Hooven said that after consulting with the Commonwealth in March 2020, he declined to file charges because he did not have any additional evidence to support the victim's statement.

At trial, the Commonwealth introduced the photos of the victim's injuries into evidence. Winkelman objected to their admission, arguing that the Commonwealth was required to call the individuals who took the photos to authenticate them. The trial court held that the photos were properly authenticated by the victim's testimony that they accurately reflected the injuries she sustained on the dates in question.

After closing arguments, Winkelman objected to allowing the jury to view the photos during deliberations on the grounds that the photos and

captions were prejudicial. The Commonwealth redacted part of the captions before the exhibits were provided to the jury, but Commonwealth exhibits one and two were still labeled "December 25th 2018 attack" and "Feb 10th 2019 attack," respectively. The photos of the victim's wrists in exhibit 2 also had circles around the bruising and "marked places from vacuum on Feb 10th 2019" written next to them. The record does not reveal what phrasing was redacted from Commonwealth exhibits two and three. The trial court allowed the exhibits to be provided to the jury after the redactions were made.

The jury convicted Winkelman of the above-captioned charges.[2] Following a presentence investigation and report, the trial court sentenced Winkelman as follows:

**Sexual assault**: 4 to 8 years' incarceration followed by 3 years of probation;

**Aggravated assault, count 1**: 3 to 6 years' incarceration, consecutive;

**Aggravated assault, count 2**: 3 to 6 years' incarceration, consecutive;

**Strangulation**: 2 to 4 years' incarceration, consecutive;

**Terroristic threats**: 2 years' probation, concurrent; and

**Unlawful restraint**: 2 years' probation, concurrent.

---

[2] He was acquitted of one count of rape, 18 Pa.C.S. § 3121(a)(2).

Sentencing Order, 1/27/22. The aggregate sentence was 12 to 24 years of incarceration followed by 3 years of probation. Winkelman filed a post-sentence motion, which was denied, and he timely appealed. He and the trial court have complied with Pa. R.A.P. 1925.

## II.

On appeal, Winkelman argues that the photographs of the victim's injuries should not have been admitted because they were not properly authenticated and that they should not have been provided to the jury, with unredacted captions, during its deliberations. He contends that his convictions were not supported by sufficient evidence, or, in the alternative, that his convictions were against the weight of the evidence presented at trial.[3]

## A.

First, Winkelman argues that the photographs of the victim's injuries were inadmissible because they were not properly authenticated.[4] He contends that the individuals who took the photos were required to testify as

---

[3] We have reordered Winkelman's issues for ease of discussion.

[4] "The admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion. An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." **Commonwealth v. Woodard**, 129 A.3d 480, 494 (Pa. 2015) (cleaned up).

to their authenticity at trial. He also argues that the jury should not have been permitted to review the photos during its deliberations, as they were prejudicial and included captions that were likely to inflame the jury.

"[T]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa. R.E. 901(a). A witness may authenticate evidence through "[t]estimony that an item is what it is claimed to be." Pa. R.E. 901(b)(1). "When the evidence in question is a photograph, it may be authenticated by testimony from a person who has sufficient knowledge that the photograph fairly and accurately reflects what the proponent is purporting that photograph to reflect." *Commonwealth v. Loughnane*, 128 A.3d 806, 814 (Pa. Super. 2015), *rev'd on other grounds*, 173 A.3d 733 (Pa. 2017). Authentication pursuant to Pa.R.E. 901(a) "generally entails a relatively low burden of proof." *Commonwealth v. Murray*, 174 A.3d 1147, 1157 (Pa. Super. 2017) (citation omitted).

Here, the victim testified at trial that she took several of the photographs herself and that Winkelman, her daughter and a friend took the remainder. She confirmed that the photos accurately depicted the injuries she had sustained as of the dates they were taken and said that all the photos were taken within a couple of days of the incidents in question. This testimony was sufficient to authenticate the photos as "fairly and accurately reflect[ing]" the injuries she described. *Loughnane*, *supra*. As the trial court observed, our

law does not require that the individual who took a photograph appear in court to testify as to its authenticity. **See** Trial Court Opinion, 4/21/22, at 3-4. Accordingly, it did not abuse its discretion in admitting the photos at trial.[5]

Next, Winkelman argues that the photos should not have been provided to the jury during its deliberations, as the captions and the photos themselves were unduly prejudicial. While Winkelman focuses much of this portion of his argument on the law governing the admission of prejudicial photographs as evidence in a trial, at the point when he raised this objection in the lower court, the photographs had *already* been admitted into evidence. Because he did not object to the admission of the photos as prejudicial before they were published to the jury, this claim is waived. **See** Trial Court Opinion, 4/21/22, at 5 (citing **Commonwealth v. Kingsley**, 391 A.2d 1027, 1036 (Pa. 1978)); Pa. R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

While Winkelman did preserve his challenge to the allegedly prejudicial captions on the photos that would be viewed by the jury in deliberations, he is entitled to no relief on this claim. A trial court has broad discretion to allow a jury to "take with it such exhibits as the trial judge deems proper" during

_____

[5] Winkelman's reliance on a footnote in the dissent in **Commonwealth v. McKellick**, 24 A.3d 982, 994 n.2 (Pa. Super. 2011) (Donahue, J., dissenting), is unavailing. While the **McKellick** dissent referred to authentication requirements in other jurisdictions, the law in Pennsylvania does not currently require additional corroboration of a photo's authenticity, as discussed *supra*.

deliberations, with limited exceptions not relevant here. Pa.R.Crim.P. 646(A), (C). The trial court ordered that the writing on the exhibits be redacted, and while certain areas were redacted in accordance with that order, the phrases "December 25th 2018 attack," "Feb 10th 2019 attack," and "marked places from vacuum on Feb 10th 2019" remained unredacted on Commonwealth exhibits one and two. However, these handwritten captions did not impart any additional information not testified to by the victim at trial, and considering the evidence presented at trial, any prejudice that may have resulted from the failure to redact these captions was *de minimus*. ***Commonwealth v. Taylor***, 209 A.3d 444, 450 (Pa. Super. 2019) (citation omitted). As a result, any error was harmless and no relief is due.

**B.**

Next, Winkelman challenges the sufficiency of the evidence to support his convictions.[6] Rather than attacking the evidence to support any of the

_____

[6] Our standard of review for a sufficiency claim is well-settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [this] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be

*(Footnote Continued Next Page)*

specific elements of the crimes charged, however, he argues broadly that the victim's testimony was incredible and uncorroborated, rendering it insufficient to establish proof beyond a reasonable doubt that any of the incidents in question occurred. He points out that the victim admitted to drug abuse before and after the alleged incidents, that she was diagnosed with bipolar disorder and taking prescription medications, that she waited a substantial period of time before reporting the abuse and that she married Winkelman after the first two incidents. He further contends that her statement to Trooper Hooven in March 2020 was inconsistent with her report in December 2020, that the dates the photographs were taken could not be verified and that none of the individuals who allegedly saw the victim's injuries at the time testified at trial.

While issues of credibility are typically addressed to the factfinder and concern the weight of the evidence presented at trial, our Supreme Court has

---

drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Lopez*, 57 A.3d 74, 79 (Pa. Super. 2012) (citation omitted).

also explained that evidence may be so weak or inconsistent as to be insufficient as a matter of law:

> Traditionally under our system of jurisprudence, issues of credibility are left to the trier of fact for resolution. . . . This concept, however, must be distinguished from an equally fundamental principle that a verdict of guilt may not be based upon surmise or conjecture. Following this principle, courts of this jurisdiction have recognized that where evidence offered to support a verdict of guilt is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, a jury may not be permitted to return such a finding.

**Commonwealth v. Karkaria**, 625 A.2d 1167, 1170 (Pa. 1993) (citation omitted). However, "**the uncorroborated testimony of a single witness is sufficient to sustain a conviction for a criminal offense, so long as that testimony can address and, in fact, addresses, every element of the charged crime**." **Commonwealth v. Johnson**, 180 A.3d 474, 481 (Pa. Super. 2018) (emphasis added).

As the trial court explained, the victim's testimony established the elements of aggravated assault, sexual assault, strangulation, terroristic threats, unlawful restraint and simple assault. **See** Trial Court Opinion, 4/21/22, at 6-10. The victim described each of the three incidents in detail and photographs of her injuries additionally corroborated her account of the events. Viewing the evidence in the light most favorable to the Commonwealth, her history of drug abuse and mental health treatment, the delay in reporting the abuse and her decision to stay with Winkelman out of fear do not so undermine the bulk of the victim's testimony as to render it "so

unreliable and/or contradictory as to make any verdict based thereon pure conjecture." ***Karkaria***, ***supra***. This claim is meritless.

## C.

Finally, Winkelman argues that the trial court abused its discretion by denying his motion for a new trial and holding that the verdict was not against the weight of the evidence.[7] His brief largely restates the argument on his sufficiency claim and hinges on the weight the jury afforded to the victim's testimony. He points out that Trooper Hooven did not observe any of the victim's injuries due to the delay in reporting the incidents and that he believed she was using methamphetamine during her initial interview. He contends that the incidents were uncorroborated, no witnesses testified to viewing the victim's injuries around the time of the assaults, and that Trooper Hooven could not verify when the photos of her injuries were taken. He asserts that it is incredible that a victim of the described assaults would decline to seek medical attention and would proceed to marry her abuser.

---

[7] When evaluating a challenge to the weight of the evidence to support a conviction, this court does not reweigh the evidence presented at trial, but rather evaluates the trial court's denial of the motion for a new trial for an abuse of discretion. ***Commonwealth v. Clay***, 64 A.3d 1049, 1054-55 (Pa. 2013). An abuse of discretion occurs "where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will." ***Id.*** (citation omitted). A trial court's determination that the verdict was not against the weight of the evidence is "[o]ne of the least assailable reasons for granting a new trial." ***Id.*** (citation omitted).

"An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court." ***Commonwealth v. Sullivan***, 820 A.2d 795, 805-06 (Pa. Super. 2003) (citation omitted). "Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." ***Commonwealth v. Widmer***, 744 A.2d 745, 752 (Pa. 2000) (quotations omitted). A new trial is appropriate only when the verdict "is so contrary to the evidence as to shock one's sense of justice." ***Commonwealth v. Olsen***, 82 A.3d 1041, 1049 (Pa. Super. 2013) (citation omitted). "[T]he evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." ***Commonwealth v. Akhmedov***, 216 A.3d 307, 326 (Pa. Super. 2019) (*en banc*) (citation omitted).

Preliminarily, we note that Winkelman does not address his argument to the trial court's exercise of discretion in contravention of our well-settled standard of review. ***Clay***, ***supra***. Instead, he restates the argument presented in his post-sentence motion and asks this Court to reweigh the evidence presented at trial. As this is outside the role of an appellate court, his claim fails on that basis. ***Id.*** Nevertheless, upon review, we conclude that the trial court did not abuse its discretion in denying relief on this claim. The trial court observed the victim's testimony at trial and concluded that her

J-A08040-23

reasons for marrying Winkelman and delaying in reporting the abuse were credible. Trial Court Opinion, 4/21/22, at 10-11. Her testimony was corroborated by the photographs of her injuries, and her initial report to Trooper Hooven was consistent with the later report she made when she provided the photos. *Id.* at 11. Finally, the trial court observed that the jury acquitted Winkelman of rape, indicating that it carefully weighed the victim's testimony in considering each of the charges. *Id.* at 11-12. Based on those circumstances, it concluded that the verdict was not against the weight of the evidence. The record supports this conclusion, and Winkelman is not entitled to relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/26/2023

- 14 -